The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Edward D. LUCERO, Defendant-Appellant.

No. 83CA0156.

Colorado Court of Appeals, Div. III.

Oct. 17, 1985.

Rehearing Denied Nov. 21, 1985.

Certiorari Denied March 3, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Peggy O'Leary, Deputy State Public Defender, Denver, for defendant-appellant.

SMITH, Judge.

Defendant, Edward Lucero, appeals the judgment of conviction entered upon jury verdicts finding him guilty of second degree murder and first degree assault. Lucero contends the trial court erred by denying him a continuance until a defense witness could testify, by denying defense counsel's motion to withdraw, by interfering with plea negotiations and thereby showing its prejudice and bias, and by denying his motions for mistrial for alleged prosecutorial misconduct in opening and closing arguments. Lucero also claims the court erred by failing to grant a mistrial because of a prospective juror's remarks, by incorrectly instructing the jury, and by imposing an excessive and unjustified aggravated sentence for his second degree murder conviction. Lucero as well argues that the sentence imposed upon him for first degree assault is unconstitutional. We affirm.

The prosecution adduced evidence showing the following events occurred on the night of the killing. Lucero's brother-in-law, Montoya, and another man got into a fist-fight; Lucero held a closed knife in his hand as he watched. Others broke the fight up after some five minutes.

One Ortivez then began "calling down" Montoya. Montoya pushed Ortivez, but a fight was averted when someone intervened and escorted Ortivez away from Montoya. Testimony concerning subsequent events is contradictory.

Lucero apparently followed Ortivez and shoved him; they fought. Lucero then either threw his knife to the ground to fight without it or dropped it trying to open it. He however recovered his knife, lunged at Ortivez, and stabbed him once. The unarmed victim, Leonard Sanchez, then intervened, kicked Lucero to draw his attention, and retreated. Lucero attacked Sanchez and stabbed him seven times; he died within a few hours.

I.

At trial, Lucero contended that he acted in self-defense when provoked by Ortivez and Sanchez. However, during pretrial hearings, Ortivez testified that Lucero's attack and subsequent stabbings were unprovoked by him. Lucero therefore moved the court for a continuance until he could secure testimony of one Martinez who was charged with stabbing Ortivez during an unrelated later altercation with him. Lucero asserted that Martinez would testify that Ortivez had a violent character which was both provocative and threatening. Martinez however intended to invoke his privilege against testifying until disposition of his own case at some indeterminable future time.

Lucero argues that the trial court abused its discretion when it denied his motion for continuance until Martinez could testify. He contends that a continuance was required both because Martinez' testimony is admissible under CRE 404(a)(2) and because it was critical to his self-defense theory. We hold that the trial court did not abuse its discretion in refusing to grant a continuance because the proffered testimony was inadmissible.

■ Evidence of prior violent acts by the victim is admissible as direct evidence of an essential element of self defense, that is, the reasonableness of a defendant's belief in the imminent use of unlawful physical force against him. *People v. Jones*, 675 P.2d 9 (Colo.1984); CRE 404 and 405. But such evidence is admissible only if the defendant knew of the victim's prior violence at the time of the offense. *People v. Ferrell*, 200 Colo. 128, 613 P.2d 324 (1980).

■ Here, the trial court found that Martinez' testimony related solely to an incident which occurred some eight months after Lucero stabbed Ortivez. Moreover, the court found that Lucero failed to show that, at the time of the instant assault, he had any knowledge of Ortivez's allegedly violent character. Under these facts, the court properly denied Lucero's motion for continuance because the proffered testimony would have been inadmissible under CRE 404 and 405. *See People v. Jones, supra.*

■ Lucero also argues that the trial court improperly denied his counsel's motion to withdraw. He contends that counsel's simultaneous representation of himself and of Martinez denied him effective assistance of counsel since counsel compromised his independent professional judgment by advising Martinez not to testify in Lucero's behalf until disposition of his own case. In light of our above ruling that Martinez' testimony would have been inadmissible, and further because joint representation does not per se violate defendant's right to effective assistance of counsel, we conclude this argument is without merit. *See Armstrong v. People*, 701 P.2d 17 (Colo.1985); *cf. People v. Castro*, 657 P.2d 932 (Colo.1983).

## II.

Lucero next argues that the trial court improperly denied his motion for substitution of judges. The prosecution and defense counsel twice presented the court with proposed plea agreements. The court found the first proposed agreement unacceptable and took the second under advisement. The court later advised the prosecutor that, while the charging concessions made in the modified plea agreement were acceptable, the sentencing concessions were not. The court then indicated what sentencing provisions it would accept and instructed the prosecutor to so inform defense counsel. Lucero contends that this constituted improper participation in plea discussions and evinced bias and prejudice on the part of the trial court. We disagree.

■ Section 16–7–302(3), C.R.S. (1978 Repl.Vol. 8) provides that:

"Notwithstanding the reaching of a plea agreement between the district attorney and defense counsel or defendant, the judge in every case should exercise an independent judgment in deciding whether to grant charge and sentence concessions."

Thus, the trial court is not bound by plea-bargain agreements proposed by the parties; instead, the court is statutorily required to reach its decision to approve or disapprove proposed concessions based upon its independent judgment. *Sober v. District Court*, 197 Colo. 250, 592 P.2d 400 (1979).

■ We reject Lucero's contention that the trial court improperly participated in the plea-bargaining process. In its response to the two proposed plea-bargaining agreements, the court merely exercised its statutory authority both in denying proposed sentence concessions and in deciding what minimal sentencing concessions it would accept. It neither threatened nor coerced Lucero to agree to any concessions. *Cf. People v. Clark*, 183 Colo. 201, 515 P.2d 1242 (1973). Nor did the court express any sentiment or belief in Lucero's guilt or innocence. *See Sober v. District Court, supra.*

Finally, Lucero asserts that the trial court evinced bias and prejudice towards him because it refused to accept the parties' proposed sentencing concessions. This argument is without merit. The trial court carefully considered Lucero's allegations of bias and, in rejecting them, made

extensive findings and conclusions. *See Smith v. District Court,* 629 P.2d 1055 (Colo.1981). The findings are supported by the record and the conclusions accurately reflect the law. We perceive no error.

## III.

Lucero argues that the trial court improperly denied his motions for mistrial for alleged prosecutorial misconduct during the prosecutor's opening and closing statements. We disagree.

### A.

In his opening statement, the prosecutor commented upon contradictions between Lucero's exculpatory statements made to police before and after consulting with defense counsel. Lucero made three different statements to police. In commenting upon Lucero's third volunteered statement, the prosecutor stated:

"And later on the defendant talks to Detective Bravo from the Police Department and that conversation is tape recorded. This is the following day after Edward Dean Lucero had been in contact with an attorney."

Lucero contends that the prosecutor's statement constituted reversible error and that his mistrial motion should have been granted. We hold that it did not constitute reversible error.

■■■The decision to grant or to deny a motion for mistrial is within the sound discretion of the trial court. *People v. Elliston,* 181 Colo. 118, 508 P.2d 379 (1973). We will not disturb the trial court's determination on review unless it is apparent that the court abused its discretion. *Barriner v. District Court,* 174 Colo. 447, 484 P.2d 774 (1971).

"The prosecutor's opening statement should be confined to a brief statement of the issues in the case and to remarks on evidence the prosecutor intends to offer which the prosecutor believes in good faith will be available and admissible." 1 ABA, *Standards for Criminal Justice,* Standard 3–5.5 (2d ed. 1982).

■ Here, Lucero's contradictory statements, and the times he made them, were admissible. However, since improper inferences could arise from the prosecutor's reference to Lucero's consultation with an attorney before giving one of his statements, the reference should not have been made. Nonetheless, defense counsel failed to make a contemporaneous objection; instead, counsel waited until trial was well into testimony of several witnesses to move for a mistrial. The trial court therefore found that any error in the opening statement could have been obviated by an admonitory instruction had defense counsel objected and asked for one.

■ Under these circumstances, we hold that the trial court did not abuse its discretion in denying Lucero's motion for mistrial. *See People v. Ferrell,* 200 Colo. 128, 613 P.2d 324 (1980).

### B.

In his closing argument, the prosecutor commented upon defense counsel's opening statement. The prosecutor remarked:

"Remember he told you he was going to prove that Leonard Sanchez had a knife ... that Johnny Ortivez had a knife. Now when you make a statement like that, back it up.

. . . .

Where was the evidence then? Didn't come from the witness stand."

Lucero contends that this statement requires reversal of the judgment because the prosecutor misstated the evidence, commented upon Lucero's failure to testify, and shifted the burden of proof to the defense. We disagree.

■ The trial court instructed the jury to disregard the prosecutor's above comments. The court further instructed the jury that the defendant had no burden to prove anything, that defendant was neither obligated to call witnesses nor to produce any evidence, and that the prosecution had the burden to prove the charges and elements beyond a reasonable doubt. We pre-

sume that the jury understood and heeded these instructions. *People v. Sexton*, 192 Colo. 81, 555 P.2d 1151 (1976).

### IV.

Lucero also argues that the trial court abused its discretion by denying his motion for mistrial based on remarks one prospective juror made in front of other prospective jurors that she had read the newspaper and that she found it hard to believe Lucero was not guilty. We perceive no error.

■ After the panel member's remark, the trial court admonished the jury that: "It became apparent in chambers that whatever she read she had forgotten and really didn't mean what she said. So, you are to disregard the statements she made." We conclude this curative instruction was sufficient to obviate any prejudice to Lucero. *See Massey v. People*, 649 P.2d 1070 (Colo.1982).

### V.

Lucero next contends that the trial court erred in limiting his inquiry on cross-examination into the alleged romantic relationship between the victim and prosecution witness Blankenship. We disagree.

■ While the right of cross-examination should be liberally extended to permit inquiry into a witness' bias or motives, limits upon cross-examination rest within the trial court's discretion, and its ruling thereon will be upheld if the limits it imposes are not so severe as to constitute a denial of that right. *People v. Loscutoff*, 661 P.2d 274 (Colo.1983).

■ Here, defense counsel asked witness Blankenship whether she and the victim were girlfriend and boyfriend and whether they were romantically involved. Blankenship denied any romantic relationship. Thus, upon proper objection, the trial court did not abuse its discretion in disallowing further questioning about the alleged relationship.

### VI.

Lucero argues that his six year sentence for first degree assault denies him equal protection of the law because the culpable mental state required for first-degree assault is essentially the same as that for criminally negligent homicide for which crime the maximum sentence is two years. Relying on *People v. Bramlett*, 194 Colo. 205, 573 P.2d 94 (1977), Lucero contends that the intent and conduct proscribed by the first-degree assault statute and § 18–3–105(1)(b), C.R.S. (1978 Repl.Vol. 8) of the criminally negligent homicide statute are not sufficiently distinguishable to justify a greater penalty when the conduct results in serious bodily injury instead of death. He therefore maintains that the maximum sentence he may constitutionally receive is two years. We disagree.

The limited nature of the Supreme Court's holding in *People v. Bramlett, supra*, cannot be overemphasized. *People v. Montoya*, 196 Colo. 111, 582 P.2d 673 (1978). The court specifically limited its decision to persons charged with first-degree assault prior to July 1, 1977, when § 18–3–202(1)(a) was amended to its present form. *People v. Bramlett, supra* (fn. 7).

■ Statutes which prescribe different degrees of punishment for the same acts committed under like circumstances by persons in like situations violate a person's right to equal protection of the laws. *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (1975). Nonetheless, to be constitutionally distinguishable acts need not be different in kind. In light of legislative power to prescribe stricter penalties for acts having greater social impact or graver consequences, a difference in degree is significant enough. *People v. Benjamin*, 197 Colo. 188, 591 P.2d 89 (1979). The gravity of injury sustained, or even intended, can be a sufficient distinction. *People v. Thatcher*, 638 P.2d 760 (Colo.1981).

■ Here, first degree assault requires the actor to have the specific intent to cause serious bodily injury. *See* § 18–3–202(1)(a), C.R.S. (1978 Repl.Vol. 8). By con-

trast, criminally negligent homicide requires a mental state different in degree from specific intent, that is, to act knowingly. *See* § 18–3–105(1)(b), C.R.S. (1978 Repl. Vol. 8). We therefore find the culpable mental state required for first degree assault sufficiently distinguishable from that required for criminally negligent homicide to justify a harsher sentence for the former. *See People v. Gibson,* 623 P.2d 391 (Colo.1981).

## VII.

Lucero lastly argues that the trial court abused its discretion by imposing what he claims is an excessive sentence for his conviction of second degree murder. He contends that the trial court's findings of aggravating circumstances are insufficient to support the sentence of eighteen years because those findings reflect only the nature of the offense. We disagree.

■ Sentencing is by its nature a discretionary decision for the trial court; its sentencing decision will not be overturned on appeal absent a clear abuse of that discretion. *People v. Hotopp,* 632 P.2d 600 (Colo.1981).

■ Section 18–1–105(1)(c), C.R.S. (1984 Cum.Supp.) allows the trial court to sentence outside the presumptive range if it concludes that extraordinary aggravating circumstances are present. *People v. Abbott,* 690 P.2d 1263 (Colo.1984). The trial court should consider the prior history and circumstances of the defendant and the facts surrounding the offense in determining whether facts justify a sentence greater than the presumptive range. *People v. Phillips,* 652 P.2d 575 (Colo.1982).

Here, the trial court reviewed the presentence report, *see People v. Gonzales,* 44 Colo.App. 411, 613 P.2d 905 (1980), and considered the evidence presented at the preliminary hearings, at trial, evidence presented at the sentencing hearing, and the entire court file.

The court's findings underscore both the nature of the case and Lucero's character. Lucero stabbed the victim some seven times. The attack was extreme, unreasonable, and unnecessary; its severity surpassed anything the circumstances could have conceivably required. Before he was slain, the victim had retreated to a position where he could not escape; he was defenseless and vulnerable to Lucero's attack. The nature and character of the victim's multiple wounds disclosed in Lucero's character a high degree of cruelty, viciousness, and callousness.

■ Under these circumstances, the record supports the trial court's finding of extraordinarily aggravating circumstances. We hold that the sentence imposed upon Lucero is neither unjustifiably harsh or excessive nor an abuse of discretion. *See People v. Valencia,* 630 P.2d 85 (Colo. 1981); *People v. Abbott, supra.*

Lucero's remaining contentions are without merit.

The judgment and sentences imposed are affirmed.

VAN CISE and BABCOCK, JJ., concur.