

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2002

# USA v. Ebel

Precedential or Non-Precedential: Precedential

Docket No. 01-2229

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Ebel" (2002). *2002 Decisions.* Paper 480.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/480

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed August 6, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2229

UNITED STATES OF AMERICA

v.

GARY EBEL,
        Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 00-cr-00070)
District Judge: Honorable Gustave Diamond

Argued February 28, 2002

Before: ROTH and FUENTES, Circuit Judges
and KATZ*, District Judge

(Filed: August 6, 2002)

_____

* Honorable Marvin Katz, District Court Judge for the Eastern District of
Pennsylvania, sitting by designation.


        Mary Beth Buchanan
        United States Attorney
        Bonnie R. Schueter (Argued)
        Assistant U.S. Attorney
        Constance W. Bowden
        Assistant U.S. Attorney
        633 United States Post Office
         & Courthouse
        Pittsburgh, PA 15219

         Attorneys for Appellee

        R. Damien Schorr, Esquire (Argued)
        1015 Irwin Drive
        Pittsburgh, PA 15236

         Attorney for Appellant

OPINION OF THE COURT

ROTH, Circuit Judge:

Gary Ebel pled guilty to conspiring to commit mail fraud.
He now wants to withdraw that plea on the ground that it
was coerced by the District Court's participation in plea
negotiations. After careful consideration of the full record of
this case, however, we conclude that, despite the District

Judge's commitment to sentence Ebel at the low end of the Sentencing Guidelines range, which apparently induced Ebel to agree to plead guilty, Ebel's substantial rights were not affected by the judge's comments. We will, therefore, affirm Ebel's conviction.

I. Background

On April 12, 2000, Gary Ebel was indicted, with nine other defendants, for conspiring to commit mail fraud in violation of 18 U.S.C. S 1343. The charges arose from the operations of two businesses, American Scientific Technology and American Underground Storage Tank Testing, owned and operated by Ebel and a co-defendant. These companies certified to owners of underground storage tanks that their tanks met federal and state

2

environmental requirements. The government alleged that Ebel and his co-defendants knowingly ignored the proper testing protocols and thereby defrauded the storage tank owners.

At his arraignment, Ebel elected to represent himself but requested stand-by counsel. The District Court set the trial for November 13, 2000, but Ebel's stand-by counsel and counsel for the government both moved for a continuance, in part because three defendants had already pled guilty and several of the remaining defendants, including Ebel, were involved in serious plea negotiations. The continuance was granted.

Throughout the proceedings, Ebel filed numerous pro se motions by sending letters directly to the District Court. As the result of one of these pro se letter-motions, the District Court scheduled a status conference on November 22. It was at this conference that Ebel alleges the District Court coerced his guilty plea.

At the outset of the conference, the District Judge remarked that he could not become involved in any plea negotiations due to the restrictions of Rule 11(e)(1) of the Federal Rules of Criminal Procedure, which provides that, "The court shall not participate in any discussions between the parties concerning any . . . plea agreement." The judge added, however, that plea discussions were a proper matter for counsel to discuss.

The District Judge then turned to the question of how soon Ebel and government counsel would be prepared to go to trial. He commented that serious plea negotiations would be a basis for another continuance, but that otherwise, the case should be set for trial. The judge then responded to a series of issues related to plea negotiations that were raised by the parties.

At this point, Ebel stated to the District Judge, "As far as a plea agreement is concerned, due to my horrible

experiences in courtrooms, I have absolutely no trust at all in anyone in this courtroom, except youself, sir." The judge assured Ebel that the court would require the government to adhere to its plea agreement, and asked if the parties should take a ten minute recess to discuss a plea.

3

Because of Ebel's mistrust of the government, government counsel then requested that the court explain how criminal history categories are computed because Ebel did not understand how his criminal history would be computed and he did not trust either the prosecutor's or his stand-by counsel's representations. In reaction to this, Ebel explained what was troubling him: He did not understand why he could not plead guilty to a 36 month term, and he did not trust either his stand-by counsel or the government to explain it to him.

It becomes apparent from the hearing transcript at this point that Ebel has agreed to plead guilty if a thirty-six month sentence is guaranteed. He states that he has instructed his stand-by counsel to bargain for such a sentence. He explains to the judge that he has rejected the government's offer of a range of 37 to 46 months, with a recommendation that the Court choose the low end of the range because he fears that, despite the recommendation, the Court will sentence him at the high end of the range. As a result, he wants an offer of a specific sentence of 36 months or a range of 30 to 36 months. He states,

> So, I am very confused, and the thing that I am real
> confused with is . . . if [the government counsel] wants
> to give the high end at thirty-six months, then why
> doesn't she put me in a range that's from thirty to
> thirty-six months and I will agree to thirty-six months
> if we are only a month apart, and it seemed ridiculous.

The District Judge then asked the government counsel why it wanted more than a 36 month sentence for Ebel. The government counsel explained that a range of 37 to 46 months was the best offer she could make. She believed the Sentencing Guidelines and the facts of this case made the minimum sentence 37 to 46 months. She also explained that it was the policy of the U.S. Attorney not to enter into an agreement for a specific sentence because it deprived the District Court of discretion.

After government counsel explained her position on the Sentencing Guidelines, the District Judge said to Ebel:

> If we are talking about a guideline that has a low end
> of thirty-seven months, unless there is something that

4

> I'm not aware of in all of this, and which I am
> operating under the assumption that the government is

> aware of, the Court would go along with the thirty-seven months. That's the guideline calculation. That's what you are looking for, isn't it?

Ebel replied, "Sir, I was looking for thirty-six. But, if that's the best I am going to get, I mean, a month is a long time. The District Judge commented that he would have no problem with a thirty seven month range.

After discussing the Sentencing Guidelines calculations with standby counsel, the judge then stated:

> All right. So, there we are. We're at what appears to the Court, to be a sentencing range that would be from thirty-seven to forty-six months, with a recommendation by the government that the Court accept the low end of it, and I cannot believe that it would not be in the public's interest to get a plea in this case that would save, I think, tremendous amounts of money, and to what end a matter of what, nine months?

Ebel responded: "In that case, Your Honor, I would like to change my plea to guilty." The District Judge replied that he would not accept the plea of a defendant who insisted he was innocent. Ebel said that that would be a partial problem because he "never had the intent." The judge commented that there was a sufficient basis for "an Alford Plea."[1] Ebel also asked that he be transferred to another jail. The judge agreed to recommend this and then commented:

> But, none of this is to induce you to enter a plea. You enter a plea because you and your counsel have decided this is in your best interest and not because of, you are going to be transferred to the Washington County Jail, or even that the Court is going to go along with the thirty-seven months, though there is no problem with that so far as voluntariness is concerned.

---

1. See North Carolina v. Alford, 400 U.S. 25 (1970) (holding that, when facing strong evidence of guilt, a defendant may plead guilty while protesting innocence to avoid going to trial).

> If this is what you want to do. I'm not offering you the thirty-seven. I'm telling you I'll go along with it, if that's what you people agreed to.

The parties recessed to complete negotiation of the plea and then returned to the courtroom for the entry of the plea.

On December 4 and 5, four more of Ebel's co-defendants pled guilty. On December 5, the remaining two defendants went to trial. These two had been hired by Ebel and at trial they blamed him for their predicament. They were acquitted by a jury on December 15. On January 16, 2001, Ebel sent

a letter to the District Court, stating: "I wish to withdraw my Guilty Plea!" The District Court denied the request. Ebel also sent other letters to the District Court that can be construed as motions to withdraw his guilty plea. Only the letters sent after the initial denial of the request to withdraw the plea mention Rule 11 or coercion by the District Court.

On May 2, 2001, the District Court sentenced Ebel to 33 months of imprisonment. His term was 33 months, rather than 37 months, because Ebel had demonstrated that the government miscalculated the loss caused by his fraud. As a result, the corrected guideline range was 27 to 33 months. The District Court sentenced Ebel to the high end of this range. Ebel appealed.

II. Standard of Review

When reviewing an allegation of a Rule 11 violation, we exercise plenary review. See United States v. Torres, 999 F.2d 376, 378 (9th Cir. 1993).

III. Jurisdiction

The District Court had jurisdiction over this action pursuant to 18 U.S.C. S 3231. We have appellate jurisdiction pursuant to 28 U.S.C. S 1291.

IV. Discussion

Rule 11(e)(1)'s prohibition of judicial involvement in plea negotiations is a "bright line." See United States v. Bruce,

6

976 F.2d 552, 556 (9th Cir. 1992). Nevertheless, when Rule 11 error has been committed in the taking of a guilty plea, we can consider the record as a whole to determine whether, under Rule 11(h), Ebel's substantial rights were affected. See United States v. Vonn, 122 S.Ct. 1043, 1050 (2002).

Rule 11's prohibition of judicial involvement in plea discussions is based on a recognition that a judge's power over an accused makes his participation in plea negotiations inherently coercive. See Fed. R. Crim. P. 11 advisor committee's notes to the 1974 amendments; See also United States v. Johnson, 89 F.3d 778, 783 (11th Cir. 1996), United States v. Barrett, 982 F.2d 193, 194 (6th Cir. 1992). A coerced plea would not only violate a defendant's constitutional rights, it would also increase the chance of convicting the innocent. See United States v. Bruce, 976 F.2d at 556 (listing reasons for Rule 11's prohibition on judicial involvement in plea discussions). Rule 11 protects against these wrongs by completely removing the judge from plea negotiations. Fed. R. Crim. P. 11 advisory committee's notes to the 1974 Amendments ("The amendment makes clear that the judge should not participate in plea discussions leading to a plea

agreement.").

The District Court in this case faced a difficult situation. The pro se defendant was willing to accept a guilty plea that would guarantee no more than a thirty-six month sentence but he trusted neither government counsel nor his stand-by counsel.

The District Judge then represented to Ebel, before he entered a plea, that the judge would sentence Ebel to the low end of the sentencing range if he pled guilty. The judge indicated his willingness to sentence at the low end of the Sentencing Guidelines range by stating, "I cannot believe that it would not be in the public's interest to get a plea in this case that would save, I think, tremendous amounts of money, and to what end a matter of what, nine months?" Immediately after that statement, Ebel changed his plea to guilty.

These statements by the judge go beyond discussing how a possible plea would effect trial scheduling and go beyond

ensuring that Ebel understood the plea bargain. The issue before us is whether such a violation of Rule 11(e)(1) requires automatic reversal of Ebel's conviction or whether we can review the whole record before us to determine under Rule 11(h) whether Ebel's substantial rights were affected. In light of the Supreme Court's recent decision in United States v. Vonn, 122 S.Ct. 1043 (2002), we conclude that, when Rule 11 error is claimed by a defendant, the Rule 11(h) review for an effect on substantial rights requires us to review the entire record before us. Id. at 1054.

The District Judge's representation that he would sentence Ebel to 37 months, the low end of the sentencing range, clearly did not coerce Ebel. Before the hearing, Ebel and the government had discussed an 11(e)(1)(B) plea. In an 11(e)(1)(B) plea, the parties agree to a sentencing range and allow the Court to set the sentence. Ebel was insisting on a range that would result in a 36 month sentence. He eventually accepted a plea with a range of 37 to 46 months on the understanding that he would receive a 37 month sentence. He was induced to do nothing beyond what he had already stated he would agree to do.

Moreover, if we examine the types of plea agreements provided for in Rule 11, we can see that the District Judge's commitment to the 37 month sentence in effect transformed the plea agreement here to a Rule 11(e)(1)(C) plea. Under Rule 11(e)(1)(C), the defendant and the government agree to a specific sentence. When an 11(e)(1)(C) plea is negotiated, it is binding on the District Court if the court accepts it. Under Rule 11(e)(3), the court then is required to inform the defendant that the court will impose the specific, negotiated sentence. Because that commitment is clearly not considered coercive, see United

States v. Andrade-Larrios, 39 F.3d 986, 990 (9th Cir. 1994), we conclude that it is similarly not coercive under the circumstances here where the length of the sentence was one that the prosecution and the defendant had already found to be acceptable.

Other parts of the record support our conclusion that Ebel was not coerced. From arraignment through sentencing, Ebel displayed a clear understanding of the

8

plea and sentencing process. He stated in his plea colloquy that no threats or promises "whatsoever" had been made to induce him to plead guilty. The District Judge also mentioned several times that Rule 11 limited the judge's involvement and admonished Ebel that, "I'm not offering you the 37 months. I'm telling you I'll go along with it, if that's what you people agree to."

The timing of Ebel's request to withdraw his guilty plea also indicated that he changed his mind after seeing two co-defendants acquitted. Moreover, he did not mention coercion by the District Court as a reason to withdraw his plea until after his initial request to withdraw his plea had been denied.

We are therefore convinced from our examination of the record as a whole that Ebel's guilty plea was voluntary and was not coerced by the District Court. His rights were not substantially affected by the remarks of the judge. Therefore, under Rule 11(h), any error is harmless.

Conclusion

For the reasons stated above, we will affirm the judgment of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

9