The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Joseph FINLEY, Defendant–Appellant.

No. 03CA1907.

Colorado Court of Appeals, Div. III.

Feb. 9, 2006.

Rehearing Denied April 27, 2006.

Certiorari Denied Sept. 11, 2006.*

---

* Justice EID does not participate.

Justice COATS would grant as to the following issue:

Whether a defense attorney who has testified at a hearing on a motion to withdraw a plea adversely to his client may resume representing his client after the court has denied the motion.

912

John W. Suthers, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Todd E. Mair, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

ROY, J.

Defendant, Joseph Finley, appeals the judgment of conviction entered on his guilty plea to violation of the Colorado Organized Crime and Control Act (COCCA), § 18–17–104(3), C.R.S.2005. He also appeals the sentence imposed. We affirm the judgment, vacate the sentence, and remand for appointment of conflict-free counsel, resentencing, and amendment of the mittimus as to presentence confinement credit.

Defendant, together with others, was charged with racketeering under COCCA; conspiracy, § 18–2–201, C.R.S.2005; and multiple counts of theft and forgery, §§ 18–4–401, 18–5–102, C.R.S.2005. These charges arose in connection with defendant's involvement in a check fraud scheme. In addition, defendant faced criminal charges in Jefferson County and New York City.

On February 24, 2003, defendant accepted a plea offer and pleaded guilty to the COCCA charge in exchange for dismissal of the

remaining charges, including those in Jefferson County, and an offer by the prosecutor to attempt to get the charges in New York dismissed.

On June 2, 2003, defendant filed motions, through plea counsel as well as pro se, to withdraw his plea. Through plea counsel, defendant claimed he had not pleaded guilty voluntarily due to pressure he felt because he believed that plea counsel did not feel prepared for trial and because he had been placed in solitary confinement for an extended period. In his own motion, defendant maintained that his solitary confinement, combined with ineffective assistance of counsel, had rendered him unable to plead guilty knowingly and voluntarily. The trial court appointed conflict-free counsel and held a hearing on defendant's motions.

After a two-day hearing, the trial court denied defendant's motion to withdraw his guilty plea and found that plea counsel did not render ineffective assistance. Plea counsel then represented defendant at the sentencing hearing, and defendant was sentenced to twenty years in prison. This appeal followed.

## I.

Defendant first contends that the trial court abused its discretion in denying defendant's motion to withdraw his guilty plea. We disagree.

To warrant a withdrawal of a guilty plea prior to sentencing, a defendant must establish a fair and just reason for doing so. A motion to withdraw a guilty plea prior to sentencing is addressed to the sound discretion of the trial court. The denial of such a motion will not be overturned absent abuse of discretion by the trial court. *People v. Chippewa*, 751 P.2d 607 (Colo.1988). To show an abuse of discretion, a defendant must establish that, under the circumstances, the trial court's decision was manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra*, 849 P.2d 33 (Colo.1993).

## A.

Defendant urges that the trial court erred in finding that plea counsel provided competent representation. We are not persuaded.

At the hearing, defendant testified that plea counsel appeared to be incompetent because he had never dealt with a COCCA case, did not explain anything to defendant, did not provide defendant with discovery, and did not file enough motions. Further, defendant testified that plea counsel told him that in exchange for a guilty plea to the COCCA charge, all other charges, including charges pending in Jefferson County, would be dismissed, and that the prosecutor would attempt to persuade the New York district attorney to dismiss the charges pending there. In addition, defendant testified that plea counsel advised him that he would be eligible for a sentence in a community corrections facility or probation. He conceded, however, that plea counsel told him that he could receive a prison sentence of between eight and twenty-four years.

Plea counsel testified that he had been a public defender for five years before going into private practice and had tried more than ten felony jury cases. He testified that he had researched COCCA cases and had conferred with other attorneys who had COCCA experience; that he met with defendant four times, and communicated with him regularly over the phone until defendant was denied access to the phone; that the discovery was voluminous; and that he provided defendant with the necessary discovery, although not all the discovery.

Plea counsel also testified that he told defendant he could be sentenced to community corrections or probation, but only indicated that it was possible, not likely, and that community corrections was a more likely scenario once the charges in New York were resolved. In addition, plea counsel testified that defendant would get a similar sentence if defendant went to trial, but that he would still face the charges pending in Jefferson County.

Based on this testimony, the trial court found that: (1) while plea counsel did not have COCCA experience, this was not unusual, as most criminal defense attorneys do not have exposure to the COCCA statute; (2) plea counsel acted as any competent attorney would by researching the statute and discussing the case with experienced attorneys;

(3) plea counsel filed several motions on defendant's behalf, and the decision not to file other motions was an appropriate tactical decision; (4) plea counsel was heavily involved in the case and was responsive to defendant's requests; (5) plea counsel was not deficient in advising defendant about the array of penalties he faced; and, (6) though plea counsel was incorrect in concluding defendant was eligible for probation, this mistake was common and not the result of incompetence. Thus, the trial court concluded plea counsel provided competent assistance to defendant.

These findings and conclusions have support in the record and, therefore, we cannot say that the trial court abused its discretion in finding and concluding that plea counsel was competent.

### B.

■ Defendant next argues that he should be allowed to withdraw his guilty plea because his mental and emotional state had deteriorated by the time he entered the plea. Specifically, defendant claims that the strain created by a considerable period of solitary confinement created a fair and just reason to withdraw the plea. We disagree.

Defendant was placed in solitary confinement between his final pretrial motions hearing and his trial date because seven prosecution witnesses were incarcerated in the same facility. He was denied access to the law library, telephone contact, and was confined twenty-three and one-half hours every day. Plea counsel testified that defendant seemed agitated and uncomfortable while in solitary confinement.

The trial court found, with support in the record, that while solitary confinement is unpleasant, defendant's decision to plead guilty was made knowingly, voluntarily, and intelligently. The trial court noted that the defendant's plea was not made on the spot, but rather was made after defendant initially informed plea counsel that he would not accept the plea agreement. In addition, at sentencing, the court asked defendant several questions to ascertain his state of mind at the time of the plea. All defendant's answers indicated that he understood the consequences of his decision.

Therefore, the trial court did not abuse its discretion in concluding that defendant had not shown a fair and just reason for withdrawing his plea.

### II.

■ Defendant next contends that the trial court erred in not providing him with conflict-free sentencing counsel. We agree. Accordingly, we vacate the sentence and remand for appointment of conflict-free counsel and for resentencing.

When, as here, there is no factual dispute and the legal effect of those facts is a question of law, our review is de novo. *See People v. Allison*, 86 P.3d 421 (Colo.2004).

Here, the trial court properly appointed conflict-free counsel during the proceedings on defendant's motion to withdraw his plea. However, during the hearing, plea counsel testified as a witness for the prosecution in direct contradiction to the testimony of defendant and adversely to the position and interests of defendant. The trial court based its findings on plea counsel's testimony, which it found more credible.

After the hearing on defendant's motion to withdraw his plea, however, plea counsel resumed representation of defendant during the sentencing phase despite the apparent conflict. The trial court never inquired of defendant as to whether he wished to so proceed nor determined that he had made a voluntary, knowing, and intelligent waiver of his right to conflict-free counsel.

■ The Sixth Amendment guarantees every defendant the right to effective assistance of counsel at all stages of criminal proceedings, including sentencing. *People v. Duke*, 36 P.3d 149 (Colo.App.2001). A subset of the right to effective assistance of counsel is the right to conflict-free counsel. *People v. Martinez*, 869 P.2d 519 (Colo.1994) (citing *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)).

■ Combining the roles of advocate and witness can create a conflict of interest between the attorney and the client because "a lawyer cannot act as an advocate on behalf of his client, and yet give testimony adverse to

the interests of that client in the same proceeding." *Riley v. Dist. Court*, 181 Colo. 90, 95, 507 P.2d 464, 466 (Colo.1973).

As our supreme court stated in *Rodriguez v. District Court*, 719 P.2d 699, 704 (Colo. 1986):

When, during the course of representing a client, an attorney learns that he or she or a member of his or her firm may be required to give testimony prejudicial to the client, DR5–102(B) establishes the following guidelines with regard to the attorney's continued role:

["]If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.["]

The rule in essence requires an attorney to cease representing a client at such time as the attorney's ability to champion the cause of the client becomes substantially impaired.

DR5–102(B), cited and quoted by the court in *Rodriguez*, has been superseded by Colo. 3.7(a), which provides as follows:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

■ When a conflict of interest between an attorney and a client arises, the court must determine whether the client has made a voluntary, knowing, and intelligent waiver of the conflict. *Rodriguez v. Dist. Court*, *supra.* If a conflict of interest exists, and there has been no waiver, the trial court must appoint conflict-free counsel to represent the defendant in further proceedings. *People v. Lopez*, 12 P.3d 869 (Colo.App.2000). The trial court failed to do so here.

Therefore, the sentence must be vacated and the matter remanded for appointment of conflict-free counsel and resentencing.

### III.

■ Finally, defendant contends that he is entitled to 633 days of credit for his presentence confinement instead of the 459 awarded him by the trial court. We disagree, although we note that defendant is entitled to credit for 461 days, not 459 days.

Defendant was arrested on separate charges in Georgia in December 2001, at which time there was an outstanding arrest warrant on the Colorado charges. In June 2002, defendant accepted a plea bargain in Georgia and was sentenced to five years probation and one year in prison, with the proviso that the prison sentence was to be suspended upon defendant's extradition to Colorado.

At his sentencing in Colorado, defendant sought additional presentence confinement credit for 169 days of confinement he spent in Georgia as well as the 461 days he spent in confinement in Colorado. The trial court granted defendant 459 days of credit for his confinement in Colorado, but denied credit for his confinement in Georgia. The court concluded that there was no substantial nexus between the Georgia confinement and the Colorado charges, and an award of credit would be duplicative.

■ Section 18–1.3–405, C.R.S.2005, provides that "[a] person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement." Credit for presentence confinement must be given for time spent incarcerated in another state while awaiting extradition to Colorado. *People v. Hardman*, 653 P.2d 763 (Colo.App.1982).

■ To receive pre-sentence confinement credit, an offender must have been actually confined and there must have been a substantial nexus between the confinement and the charge for which the sentence is ultimately imposed. *Beecroft v. People*, 874 P.2d 1041 (Colo.1994). A particular period of presentence confinement qualifies for credit if it was actually caused by the charge or conduct for which the defendant is to be sentenced. *Massey v. People*, 736 P.2d 19 (Colo.1987). In this context, there must be a

substantial nexus between such charge or conduct and the period of confinement for which such credit is sought. *Massey v. People, supra* (citing *Schubert v. People,* 698 P.2d 788 (Colo.1985)). A defendant is not entitled to duplicative credit. *People v. Etts,* 725 P.2d 73 (Colo.App.1986).

Here, the record does not support defendant's contention that he was being held in Georgia on the Colorado charges. Defendant was not arrested on the Colorado warrant, nor was he held in Georgia on the Colorado charges.

 Even if defendant were able to produce such evidence, he would not be entitled to credit for time served in Georgia because such credit would be duplicative. Neither court ordered the two sentences to be served concurrently. Therefore, the Georgia sentence is presumed to be served consecutively to the Colorado sentence. *See People v. Emig,* 676 P.2d 1156 (Colo.1984). As a result, defendant should not receive credit on both sentences.

We conclude that the trial court did not err in the award of presentence confinement credit. However, we remand to the trial court to correct defendant's mittimus to reflect presentence confinement credit for 461 days instead of 459 days, as the prosecution concedes.

The judgment is affirmed, the sentence is vacated, and the matter is remanded for appointment of conflict-free counsel, for resentencing, and for correction of the mittimus as to presentence confinement credit.

Judge TAUBMAN and Judge LOEB concur.