The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

James M. CRUMB, Jr., Defendant–Appellant.

No. 06CA0814.

Colorado Court of Appeals, Div. I.

Sept. 18, 2008.

588

John W. Suthers, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

The Joffe Law Firm, Antony M. Noble, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO.*

Defendant, James M. Crumb, Jr., appeals the district court order denying his Crim. P. 32(d) motions to withdraw his guilty plea. We affirm.

■ To warrant the withdrawal of a guilty plea prior to sentencing, a defendant must establish a fair and just reason for doing so. *People v. Chippewa*, 751 P.2d 607, 609 (Colo. 1988); *People v. Finley*, 141 P.3d 911, 914 (Colo.App.2006). The defendant must also establish that denial of the request to withdraw the plea will subvert justice. *People v. Gutierrez*, 622 P.2d 547, 559 (Colo.1981); *People v. Jones*, 33 P.3d 1258, 1259 (Colo. App.2001).

■ A Crim. P. 32(d) motion to withdraw a guilty plea is addressed to the sound discretion of the trial court, and its ruling will not be reversed on appeal absent an abuse of discretion. To constitute an abuse of discretion, the court's denial of the motion must be manifestly arbitrary, unreasonable, or unfair. *People v. DiGuglielmo*, 33 P.3d 1248, 1250 (Colo.App.2001); *People v. Lewis*, 849 P.2d 855, 856 (Colo.App.1992).

Here, defendant claims he had a fair and just reason to withdraw his plea because the district court judge impermissibly participated in plea discussions and had a disqualifying conflict of interest.

## I. Participation in Plea Discussions

We reject defendant's claim that the district court improperly participated in plea discussions and ·erred by denying his motion on that basis.

### A. Factual Background

At a pretrial conference the Friday before the Monday trial, the judge asked the parties about the status of their ongoing plea discussions. The parties had been negotiating for several weeks trying to reach an agreement resolving several of the twelve criminal cases pending against defendant, including the case set for trial in which he was charged with eight counts of felony theft, one count of criminal impersonation, and seven habitual offender counts. The case set for trial had been pending for nearly four years and defendant had waived his speedy trial rights. Much of the delay was due to bond forfeitures for defendant's failure to appear and the withdrawal of several of his privately retained attorneys as a result of his fraudulent payment of their fees. Defendant appeared at the pretrial hearing pro se but with court-appointed advisory counsel.

The prosecutor indicated that if the parties did not reach a disposition that day, all plea offers would be withdrawn because the prosecution needed to prepare for trial and because several witnesses were flying in from out of town over the weekend. The court advised defendant that he could either enter into a plea bargain that day or proceed to trial the following Monday, and that if he were found guilty of all charges, the court would be required to sentence him as a habitual offender to up to twenty-four years for each of eight class four felony convictions.

After a recess, the prosecutor informed the court that the parties still had not reached an agreement. When defendant indicated that he was unwilling to plead to any habitual criminal counts, the judge told defendant he could not force the prosecutor to dismiss those charges. The court then told defendant:

Let me just say this. This is more as a human being than as a judge. You've got a lot on your plate. I understand it, but you've also had a lot of time to think about it. It's only fair that—we took a lot of time yesterday afternoon and I'm trying to be patient and I'm not being impatient now, but it is unfair for me to do anything that makes [the prosecutor] have to keep delaying his preparation. If we're going to go to trial, he's got a right to prepare for his case, just as you do. If you're not going to go to trial, that's a different ball of wax; but, you know, you're

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

facing significant—you're facing the potential of significant time, Mr. Crumb, either way. I mean, we understand that, but if—if there's any discretion that can be exercised, and I'm not promising you anything when I say this, that discretion obviously exists in the context of a disposition. It will not exist if you are convicted and then habitual criminal charges kick in. There is just nothing. That's—I'm rubber stamping what the legislature tells me to do at that point.

Defendant then conferred with his advisory counsel, who told the court he thought the parties had reached an agreement. The prosecutor indicated that the parties had agreed to a sentencing range and were "fine tuning the counts." Before adjourning to allow the parties to finalize their agreement, the court commented "I'm not going to be a happy judge if the People tell me that we don't have a deal."

When the parties returned at 4:30 that afternoon, the prosecutor told the court they had reached a disposition of the fifty felony counts and seven habitual criminal counts filed in six of defendant's twelve cases. Defendant confirmed that the prosecutor's description of the terms of the agreement was accurate, but indicated that he had not yet finished reading the lengthy written agreement. The court then conducted a thorough providency advisement during which defendant confirmed that he fully understood the charges against him and the consequences of pleading guilty, and assured the court that he had not been coerced or pressured into pleading guilty. The court accepted defendant's guilty plea as having been entered "freely, voluntarily, knowingly, and without coercion."

Before sentencing, defendant filed two motions to withdraw his plea. As pertinent here, defendant claimed that the judge had impermissibly participated in plea discussions and in doing so pressured him into pleading guilty, and that the judge had a disqualifying conflict of interest. After a hearing, the district court denied the motions and later sentenced defendant to a total of eighty years in prison.

## B. Analysis

■ Section 16–7–302(1), C.R.S.2007, and Crim. P. 11(f)(4) provide that a "trial judge shall not participate in plea discussions." The purposes of this prohibition are to prevent the judge from shaping the plea bargain or persuading the defendant to accept a particular agreement, and to preserve judicial impartiality. *See People v. Clark,* 183 Colo. 201, 203, 515 P.2d 1242, 1242–43 (1973); *People v. Venzor,* 121 P.3d 260, 263 (Colo.App. 2005); *People v. Roy,* 109 P.3d 993, 995 (Colo.App.2004).

The federal counterpart to Crim P. 11(f)(4) has been interpreted as creating a "bright-line rule" forbidding "all forms of judicial participation" before parties have reached a final agreement. *United States v. Bruce,* 976 F.2d 552, 556 (9th Cir.1992) (citations omitted); *see also United States v. Ebel,* 299 F.3d 187, 191 (3d Cir.2002).

■ With respect to sentencing agreements, a court impermissibly inserts itself into the plea bargaining process if it "comments on or mandates what it perceives to be an appropriate penalty for a defendant in the context of plea agreement discussions." *U.S. v. Bierd,* 217 F.3d 15, 20 (1st Cir.2000); *see, e.g., United States v. Miles,* 10 F.3d 1135, 1138–40 (5th Cir.1993) (judge violated rule by indicating that he would be more comfortable if the defendants were never released from custody and effectively helped craft a more stringent plea agreement than the one the parties proposed); *United States v. Anderson,* 993 F.2d 1435, 1439 (9th Cir.1993) (court violated rule by its "prospective refusal to accept a plea to fewer than the full thirty counts, and direction to the prosecutor not to offer any such deal in the future"); *United States v. Barrett,* 982 F.2d 193, 194– 96 (6th Cir.1992) (judge violated rule by telling both parties' counsel "there is no way on God's green Earth I'm going to sentence [defendant] to only seven years, and I think the likelihood is I'm going to exceed the guidelines").

■ A trial judge also may not threaten a defendant with a longer sentence if he or she pursues his or her right to a trial instead of pleading guilty. *Clark,* 183 Colo. at 204, 515

P.2d at 1243; *see also United States v. Casallas*, 59 F.3d 1173, 1177 (11th Cir.1995) (plea vacated when the court emphasized to defendant who declined to plead guilty that he would receive a ten-year minimum sentence under the proposed agreement but risked the fifteen-year mandatory minimum if he were convicted after trial); *Bruce*, 976 F.2d at 555, 558 (reversal required where judge commented that "[i]f it [were]s my child, I would think carefully about" accepting the plea offer, repeatedly urged the defendants to "think carefully" about the fact that they faced life sentences upon conviction after trial, reminded them that the penalty under the sentencing guidelines would be "so heavy, so very, very heavy," and requested that the prosecution leave the offer open to allow the defendants additional time).

Some federal courts have interpreted the rule as prohibiting a judge from advising a defendant of the comparative sentencing ranges before the parties reach a specific agreement. *See United States v. Cano-Varela*, 497 F.3d 1122, 1133 (10th Cir.2007) (any "discussion of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well-intentioned"); *United States v. Corbitt*, 996 F.2d 1132, 1134 (11th Cir.1993)("The sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement.") (internal citations and quotations omitted); *United States v. Werker*, 535 F.2d 198, 201 (2d Cir. 1976) (citations omitted) ("The commentaries regarding this injunction, and consideration of its intendment, leave no room for doubt that its purpose and meaning are that the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement.").

Others have not read the rule as being so rigid. *See United States v. Frank*, 36 F.3d 898, 903 (9th Cir.1994) ("The rule against judicial participation in plea bargaining protects the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge. It does not establish a series of traps for imperfectly articulated oral remarks."); *cf. United States v. Crowell*, 60 F.3d 199, 204 (5th Cir.1995) (no violation of Rule 11 when the court, in evaluating a plea agreement that had been presented, compared a defendant's sentence under a proposed plea agreement with the potential sentence upon conviction after trial).

Colorado's version of Rule 11 does not include a corollary to Federal Rule 11(h), which provides that "[a] variance from the requirements of this rule is harmless error if it does not affect substantial rights." Nevertheless, our courts have analyzed claims alleging violations of other aspects of Rule 11 under a plain or harmless error standard. *See Young v. People*, 30 P.3d 202, 207 (Colo. 2001) (error in Crim. P. 11 advisement subject to harmless error review); *Dawson v. People*, 30 P.3d 213, 216 (Colo.2001) (same).

■ Likewise, we conclude that a claim that a judge improperly participated in plea negotiations is subject to plain or harmless error analysis, depending on whether the defendant raised the issue in the trial court. *See United States v. Hicks*, 228 Fed.Appx. 314, 316 (4th Cir.2007); *United States v. Bradley*, 455 F.3d 453, 461 (4th Cir.2006); *Ebel*, 299 F.3d at 192; *Cripps v. State*, 122 Nev. 764, 137 P.3d 1187, 1192 (2006). Here, because defendant moved to withdraw his plea, alleging that the judge violated the prohibition against judicial participation in the plea bargaining process, we apply a harmless error standard on review.

■■ Error is harmless "if there is not a reasonable probability that the error contributed to the defendant's conviction." *Crider v. People*, 186 P.3d 39, 45 (Colo.2008) (citations omitted); *see also People v. Miller*, 113 P.3d 743, 754 (Colo.2005). We consider the record as a whole to determine whether the error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Crider*, 186 P.3d at 45; *People v. Suazo*, 87 P.3d 124, 127 (Colo.App.2003). Error is not harmless if it leaves the reviewing court with "grave doubt" as to the fairness of the proceedings. *People v. Welsh*, 80 P.3d 296, 310 (Colo.2003).

Here, we agree with defendant that the court's comment that he would not "be a happy judge if the People tell me that we don't have a deal" was improper and violated the proscription against judicial participation in plea discussions. Further, the court should not have compared the sentencing consequences of a guilty plea and a conviction following a jury trial prior to the formal providency advisement conducted after the parties reached their agreement. However, after reviewing the record as a whole, we conclude the court's remarks did not contribute to defendant's decision to plead guilty or undermine the fairness of the proceedings. The error was thus harmless.

There is a qualitative difference between the court's remarks here and the trial judges' comments in the cases cited above in which appellate courts have vacated the defendants' guilty pleas based on improper judicial participation in plea discussions. Those cases involve more judicial involvement in negotiating specific sentencing agreements, such as overt attempts to persuade a defendant to plead guilty; representations regarding the specific sentence that would be imposed following a guilty plea as opposed to a conviction after trial; or threats of a harsher sentence if the defendant exercised his right to a jury trial. *See Cano–Varela,* 497 F.3d at 1133; *Bierd,* 217 F.3d at 20; *Casallas,* 59 F.3d at 1177; *Corbitt,* 996 F.2d at 1134; *Miles,* 10 F.3d at 1138–40; *Anderson,* 993 F.2d at 1439; *Bruce,* 976 F.2d at 555, 558; *Barrett,* 982 F.2d at 194–96; *Werker,* 535 F.2d at 201; *Clark,* 183 Colo. at 204, 515 P.2d at 1243; *Roy,* 109 P.3d at 995.

This case involves none of those clear transgressions. Despite the court's improper "happy judge" comment, its colloquy with the defendant did not undermine the fairness of the proceedings or the purposes of the prohibition against judicial participation in plea discussions.

As noted above, defendant's case had been pending for many years and the parties had been negotiating a multiple-case agreement for several weeks. The court made its "happy judge" comment the afternoon of the last business day before trial was scheduled to start and after the parties announced they had reached an agreement. The court remained impartial throughout the proceedings, did not participate in any discussions between the parties concerning the terms of any agreement, and did not suggest or encourage a particular plea bargain. Nor did the court pressure defendant into pleading guilty by threatening him with a longer sentence if he exercised his right to go to trial. It merely explained the difference between discretionary sentencing and habitual criminal sentencing.

Rather, the court informed defendant about his choices and their potential consequences and encouraged him to make a decision. Although defendant indicated he had not read the entire agreement, the court gave him a thorough oral providency advisement.

Thus, we conclude the record supports both the trial court's finding that defendant entered his plea knowingly and voluntarily and its subsequent finding in its order denying his motions to withdraw his plea, that defendant fully understood the terms of the agreement and had not been pressured into pleading guilty. Accordingly, we find no reversible error in the trial court's ruling that defendant was not entitled to withdraw his plea based on the judge's participation in plea discussions. *See Venzor,* 121 P.3d at 263–64; *People v. Lucero,* 714 P.2d 498, 503 (Colo.App.1985).

## II. Conflict of Interest

We also reject defendant's claim that the district court erred by denying his motion to recuse on the ground that the judge had a conflict of interest because of a connection he had with one of the victims.

A judge is disqualified to hear or try a case if, as relevant here, he or she "is in any way interested or prejudiced with respect to the case, the parties, or counsel." § 16–6–201(1)(d), C.R.S.2007; Crim. P. 21(b)(1)(IV). Canon 3C(1) of the Colorado Code of Judicial Conduct also requires a judge to "disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." *See also People v. Julien,* 47 P.3d 1194, 1197 (Colo.2002); *People v. Dist.*

*Court,* 192 Colo. 503, 510, 560 P.2d 828, 833 (1977). This rule covers situations in which the judge has either an actual or apparent bias or prejudice. *People v. Schupper,* 124 P.3d 856, 859 (Colo.App.2005), *aff'd,* 157 P.3d 516 (Colo.2007).

■ Thus, if a judge has a bias or prejudice that in all probability will prevent him or her from dealing fairly with a party, the judge must not preside over the case. *People v. Arledge,* 938 P.2d 160, 167 (Colo.1997). However, unless a reasonable person could infer that a judge would be prejudiced against a defendant, it is the judge's duty to sit on the case. *Smith v. Dist. Court,* 629 P.2d 1055, 1057 (Colo.1981).

Here, defendant did not comply with the procedural requirements for seeking to disqualify a judge, *see* section 16–6–201(3), C.R.S.2007; Crim. P. 21(b)(1), but claimed in his motion to withdraw his guilty plea that the judge should have recused himself sua sponte based on his connection with one of the victims.

■ We accept as true defendant's allegation that the judge had a connection with one of the victims. *See People v. Dist. Court,* 192 Colo. at 509 n. 2, 560 P.2d at 832 n. 2. However, nothing in the record reveals the nature or extent of that relationship. Not every connection between a judge and a participant in a case will require the judge to disqualify himself or herself. *See Julien,* 47 P.3d at 1195–96 (judge's prior association with the office of the district attorney who was prosecuting the case did not disqualify judge from hearing the case). Accordingly, based on this record, we perceive no conflict or disqualifying bias that would have required the judge to disqualify himself from hearing this case. Therefore, the court did not err in denying defendant's motion to withdraw his guilty plea on that basis. *See People v. Taylor,* 131 P.3d 1158, 1166–67 (Colo.App.2005).

The orders are affirmed.

Judge ROTHENBERG concurs.

Judge ROMÁN concurring in part and dissenting in part.

I respectfully dissent from part I.

As the majority notes, section 16–7–302(1), C.R.S.2007, and Crim. P. 11(f)(4) provide that a "trial judge shall not participate in plea discussions." This rule serves three purposes (1) preventing the judge from shaping the plea bargain, (2) prohibiting the judge from persuading the defendant to accept a particular agreement, and (3) preserving judicial impartiality. *See People v. Clark,* 183 Colo. 201, 203, 515 P.2d 1242, 1242–43 (1973). Our supreme court has admonished that "participation by the trial judge in the plea bargaining process must be condemned." *Id.* at 204, 515 P.2d at 1243.

Rather than condemning what it acknowledges are violations of Crim. P. 11(f)(4), however, the majority concludes the violations were harmless. Specifically, despite concluding that (1) the district court violated the proscription against judicial participation in a plea discussion when commenting that he would not be a "happy judge" if the People told him they did not have a deal, and that (2) the court should not have compared the sentencing consequences of a guilty plea and a conviction following a jury trial prior to the formal providency advisement conducted after the parties reached their agreement, the majority concludes that the errors were harmless. Because I reach the opposite conclusion and conclude that the errors were not harmless, I would vacate defendant's guilty plea and sentence and remand with directions that his case be reassigned to a different judge.

I do not believe that automatic reversal or vacatur is required, however. Rather, I would follow the two-part test articulated in *United States v. Crowell,* 60 F.3d 199 (5th Cir.1995), when, as here, defendant preserved the issue on appeal:

> [W]hen an appellant claims that a district court has failed to comply with Rule 11, we shall conduct a straightforward, two-question "harmless error" analysis: (1) Did the sentencing court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant?

*Id.* at 204 (quoting *United States v. Johnson,* 1 F.3d 296, 298 (5th Cir.1993)).

### 1. Did the Sentencing Court Violate Crim. P. 11(f)(4)?

Prior to commenting that he would not be a "happy judge" if the parties failed to reach a deal, the district court also spoke directly to the pro se defendant while plea negotiations were on going, comparing the possible sentence consequences:

> Let me just say this. This is more as a human being than as a judge. You've got a lot on your plate. I understand it, but you've also got to think about it … you know, you're facing significant—you're facing the potential of significant time, [defendant], either way. I mean, we understand that, but if—if there's discretion that can be exercised, and I'm not promising you anything when I say this that discretion obviously exists in the context of a disposition. It will not exist if you are convicted and then habitual criminal charges kick in.

I agree with the majority that the district court violated Crim. P. 11(f)(4). As noted, this conclusion does not end my inquiry.

### 2. Did the Crim. P. 11(f)(4) Violation Affect Defendant's Substantial Rights?

The federal "[c]ourts of [a]ppeals all appear to hold that any 'discussion of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well-intentioned.'" *United States v. Cano–Varela,* 497 F.3d 1122, 1133 (10th Cir. 2007) (quoting *United States v. Johnson,* 89 F.3d 778, 783 (11th Cir.1996)). The Tenth Circuit Court of Appeals concluded, and I agree, that these type of errors "'almost inevitably seriously affect the fairness and integrity of judicial proceedings' and affect substantial rights." *Id.* (quoting *United States v. Bradley,* 455 F.3d 453, 463 (4th Cir.2006)). Thus, I believe it would be a rare case that survives harmless error analysis when the trial court participates in plea discussions.

This is not such a case. The majority concludes that the "happy judge" comment is harmless because it occurred after the parties announced they had reached an agreement. However, prior to that comment the trial court had informed defendant that it had sentencing discretion in the context of a disposition but not if he went to trial and was convicted of habitual criminal charges. Reviewing the record as a whole, I conclude that the trial court improperly suggested or encouraged defendant to take a plea bargain by suggesting the possibility of discretion in the sentence if he took a plea bargain, but not if he went to trial and was convicted. That the trial court couched defendant's options as a non-promise does not, in my view, make the suggestion harmless, given the unequal position of a trial judge in the plea bargaining, and later sentencing, process. Accordingly, I am left with grave doubt as to the fairness of the proceeding. *See Cano–Varela,* 497 F.3d at 1133 (any "discussion of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well intentioned").

This case differs, moreover, from the other two court of appeals decisions cited by the majority and is closer to the supreme court's *Clark* decision. In *People v. Venzor,* 121 P.3d 260, 263–64 (Colo.App.2005), the division concluded that the "trial court did not commit itself to a sentencing position before the agreement was entered," but merely made "observations regarding the evolving legal posture of the case, and … inquiries as to whether the parties still wished to consummate their agreement." Similarly, in *People v. Roy,* 109 P.3d 993 (Colo.App.2004), the division observed that the trial court initially agreed with a plea agreement and later refused to accept its terms. In contrast, the trial court's comments here though not as flagrant, more closely resemble the type of improper judicial participation condemned by the supreme court in *Clark,* 183 Colo. at 204, 515 P.2d at 1243 (trial court forced defendant to plead guilty to a lesser offense in exchange for a relatively short sentence or suffer a life sentence if convicted).

Therefore, I conclude that no matter how well intentioned, and I do believe it was well intentioned, the district court's Crim. P. 11(f)(4) violation affected defendant's substantial rights, and thus was not harmless.

*See Cano–Varela,* 497 F.3d at 1134 (Rule 11 "contains no avuncular-judge exception").

Accordingly, I would vacate the plea and sentence and remand the case for reassignment to another judge. *See Cano–Varela,* 497 F.3d at 1134 (where defendant accepts a guilty plea following trial judge's improper participation and then attempts to withdraw the plea prior to trial, appropriate remedy is to vacate plea and reassign case to another judge); *cf. Clark,* 183 Colo. at 204, 515 P.2d at 1243 (case remanded for resentencing where, despite trial court's improper involvement in plea negotiations, defendant received a fair trial).