No. 21379.

RALPH LAWRENCE MAES *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(396 P.2d 457)

Decided November 2, 1964.     Rehearing denied November 23, 1964.

Mr. NATHAN DAVIDOVICH, for plaintiff in error.

Mr. WALTER F. SCHERER, for Hon. Edward J. Keating.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

Maes filed a motion before us asking, in substance, that we enter orders in three respects: (1) that we allow him to proceed in forma pauperis on writ of error directed to an adverse judgment and sentence; (2) that we direct the trial court to continue at state expense its appointment of counsel for him in the present proceedings; and (3) that we order the trial court to have prepared for filing and use in this Court, without cost to Maes, the transcript of proceedings had before it. A rule to show cause was issued to the trial judge.

Maes had been accused of the crime of non-support. To this charge he pled not guilty. Later, he was permitted to change his plea to that of nolo contendere. Before the latter plea was accepted, however, the trial court advised him of his right to a trial by jury, and of his right to have counsel (court-appointed in the event he was unable to employ one), and warned him of the consequences should the plea of nolo contendere be received. Notwithstanding such advice and warning, Maes persisted in his plea of nolo contendere. The plea was then accepted and entered.

At once Maes asked leave to apply for probation. Leave was granted. At the same time, Maes advised the trial court that the probation report could be considered as evidence in the disposition of his case. Hearing on the application was thereupon set for September 12, 1963, five weeks after the entry of the plea and the application for probation.

While his application for probation was pending, Maes disappeared, became a fugitive, and his bond was forfeited. He was later apprehended and returned to the jurisdiction of the trial court. On April 13, 1964, pursuant to Maes' request, present counsel was appointed to represent him in any further proceeding.

On its own motion, the trial court on May 26, 1964, appointed a psychiatrist to examine Maes. Maes was

thereafter examined. The following conclusions of the psychiatrist appear in his letter, dated June 4, 1964, directed to the trial court:

"It is my opinion that this defendant has a character disorder and that he is an individual who is not willing to profit from experience. This is a common personality defect with which people are born and which leads to chronic antisocial behavior and which is not amenable to treatment in more than ninety per cent of the cases. Unfortunately, these individuals, by nature, are completely selfish and interested only in their immediate self-gratification at whatever risk or cost. They also have the ability to plead their case well in order to avoid trouble and relapse into the same pattern for wrongdoing; nor do they appreciate punishment and its consequences. These individuals are the trouble-makers of society; sometimes called 'the disturbers of the peace.'

"In my opinion he was legally sane on each of the occasions that I examined him and was legally sane on the occasion which caused his arrest."

On June 12, 1964, Maes sought leave to withdraw his plea of nolo contendere, and to enter pleas of not guilty and not guilty by reason of insanity at the time of the commission of the offense. A hearing was held on the matter on the same day, and at its conclusion, the trial court denied the motion. Imposition of sentence to the penitentiary for not less than eighteen months and not more than five years followed.

In its return to our order to show cause, the trial court stated:

"In denying [Maes'] motion for change of plea, this court exercised its judgment on the merits of the motion and, under all of the facts and circumstances, submits that said judgment was neither arbitrary nor capricious. This court took into consideration, inter alia, [Maes'] previous history as disclosed by his admissions to the probation department, wherein he, in effect, admitted that he had failed to support his child, a copy of which

report is attached hereto. Further, this court has never been advised by [Maes] or his counsel that he has a meritorious defense to the charge against him.

"This court was, and is, of the opinion that [Maes] entered his original plea knowingly and with a full understanding of the nature of the charge and that it was entered without fear, fraud or misrepresentation. Inasmuch as [Maes] has never factually suggested his innocence of the charge against him, this court felt that substantive justice, nor [his] rights would be prejudiced by a denial of the motion."

It is unnecessary to set forth the material contained in the report of the probation officer. In the consideration of its contents in connection with other matters, we find much to sustain the action of the trial court in its denial of the application for leave to withdraw the plea of guilty, and we find little to persuade us to hold that a contrary result should have eventuated.

We are disinclined to upset the ruling of the trial court made after a hearing in which it had certain advantages not available to us. Thus, from the inception of the case, it had opportunities to observe and evaluate Maes. In this respect, the trial court had before it circumstances which moved it to permit a change of plea from that of not guilty to nolo contendere. And finally, it had before it the totality of circumstances, including the probation report, which prompted a denial of the request for withdrawal of the nolo contendere plea and the entry of the pleas of not guilty and not guilty by reason of insanity.

■ One accused of crime may not, as a matter of right, have his plea of guilty withdrawn or changed. An application for the withdrawal or change of such plea is addressed to the discretion of the trial court, and only when it is made to appear that that discretion has been abused will we act. *Abshier v. People,* 87 Colo. 507, 289 Pac. 1081; *Champion v. People,* 124 Colo. 253, 236 P.2d 127.

The law pertaining to applications to withdraw a plea is well set forth by the Supreme Court of New Jersey in the case of *State v. Daniels,* 38 N.J. 242, 249, 183 A. (2d) 648, 652:

"Applications to withdraw a plea are by their very nature within that class of matters addressed to the exercise of the court's discretion. * * * By this is meant discretion founded on the facts and the applicable law and not simply an undisciplined whim. The concept has particular meaning in connection with the scope of review on appeal, for it is axiomatic that the trial court's conclusion in such situations will not be upset unless there has been a so-called 'abuse' of discretion."

■ To warrant the exercise of discretion favorable to a defendant concerning a change of plea, there must be some showing that justice will be subverted by a denial thereof, as where a defendant may have been surprised or influenced into a plea of guilty when he had a defense; where a plea of guilty was entered by mistake or under a misconception of the nature of the charge; where such plea was entered through fear, fraud, or official misrepresentation; or where it was made involuntarily for some reason. *Champion v. People,* supra.

■ Whether such showing was made is a matter for the trial court to decide. Its decision is normally binding on us when it appears that it has been made in the exercise of a judicial discretion. Our sole function then is to scrutinize the discretion exercised. We intervene only where we note an abuse of discretion.

■ There was no impropriety in the consideration by the trial court of the report of the probation officer. It contained a number of admissions the effect of which Maes in no manner and to no degree diminished. The trial court would have been a court of credulity had it sanctioned reinstatement of the plea of not guilty and permitted the filing of the insanity plea, after it had accepted a plea impliedly admitting guilt, had before it the result of the psychiatric examination, and further

had availed itself of the material in the probation report containing damning data of Maes' guilt. See *Abshier v. People,* supra.

In applying the law thus cited, we hold that the trial court acted properly in the premises; and hence Maes' motion, seeking orders from us directing the trial court to appoint counsel and to provide him with a transcript, should be, and is hereby, denied.

The rule is discharged.

MR. JUSTICE SUTTON, MR. JUSTICE DAY, and MR. JUSTICE PRINGLE dissent.

MR. JUSTICE DAY dissenting.

I respectfully dissent.

The showing before this court is:

1. That the defendant entered a plea of nolo contendere without advice of counsel;

2. That prior to the imposition of sentence he was afforded counsel for the first time, who advised him that he should change his plea;

3. That appointed counsel filed motions to withdraw the plea and enter a plea of not guilty and motion for admission to bail;

4. That all motions were denied and that sentence was imposed upon the defendant for a term of 18 months to 5 years;

5. That a motion for new trial was filed and denied.

In view of the trial court's unfavorable action and the sanction conferred upon it by this court, of what use to the defendant was the appointment of counsel? The reason that the constitutional guarantees of right to trial by jury and right to counsel are secured to a defendant under the Federal and State constitutions is to afford him an opportunity to demonstrate under proper evidence that the facts do not, in law, amount to a crime.

The statute, under which Maes was charged, (C.R.S.

'53, 43-1-1), omitting those portions not pertinent here, provides:

"Any man who shall willfully neglect, fail or refuse to provide reasonable support * * * shall be deemed guilty of a felony, and upon conviction shall be punished by imprisonment in the penitentiary * * * unless it shall appear that owing to physical incapacity or other good cause he is unable to furnish the support * * *."

Since variable elements of the crime are willful neglect, failure or refusal to provide reasonable support, excepting physical incapacity or other good cause, the result of the majority clearly flies in the teeth of reason as well as justice.

The only admission that Maes has made of record, other than the plea of nolo contendere, warrants perusal and reads as follows:

"In 1961, I gave my wife $120.00. I was living with her at that time. She had me thrown in jail and when I got out I had my Parole transferred to Pueblo. I was unemployed at this time because I had been in an accident. I could not pay her anything. I found a job at a hospital and started paying her $10.00 a week for six months. I stopped making payments in February 1962 *because I was in the hospital,* and when the police came up to serve me the papers I read them but they were not delivered to me. I left the same night and came back to Denver. One year later, they picked me up in Pueblo for Non-Support. In the event I am granted probation, I am willing to make regular payments." (Emphasis supplied.)

Interspersed through the probation report and the report of the psychiatrist appointed to examine Maes are recitals of circumstances which, if pieced together and proper dates supplied, may be a complete defense to a *criminal charge for non-support.* Despite the fact that the doctor labels defendant's statements as "convenient," the defendant, nevertheless, is entitled under the law, to have his credibility determined by a jury.

The period during which defendant is charged with non-support is from April 1, 1962, to April 22, 1963. Defendant's statement to the probation officer was that he was supporting his wife with payments of $10.00 a week until he went into the hospital. What caused him to become hospitalized and the length of his stay at the hospital has not been revealed to the court; and furthermore, no attempt has been made, so far as we can determine from the record, to ascertain the exact dates and duration of his confinement. There is a statement in the record that this defendant was stricken with hepatitis in 1962. When he was first stricken, whether it resulted in his confinement at home or any other illuminating factors pertaining to his disability could be, and probably would be, properly developed by proper evidence presented to a jury. It is clearly demonstrated by the doctor's report that the hepatitis confined him to the Veterans Hospital, in Albuquerque, New Mexico, *for the last four months* during the period for which he is charged with non-support, namely, January, February, March and April of 1963. There is a statement in the probation report that the defendant was in an accident in 1961; but the psychiatrist's report says the accident occurred in 1962. No effort was made on the part of those reporting to the court to reconcile these dates. Defendant's counsel, in asking for a change of plea and for a trial, may have competent clarifying evidence on these dates. There is a claim of brain damage, which may well be substantiated by medical proof. There is a claim of headaches and loss of memory which were downgraded by a psychiatrist, but which defense counsel, with the aid of court-appointed medical help, may be able to develop more fully. There is a report from the Colorado Department of Rehabilitation in the record which states: "His inability to obtain full time employment [is] because of either a brain damage or a need for psychiatric treatments. Final diagnosis is expected within two weeks. At that time a determination will be made re-

garding eligibility for vocational rehabilitation services." Defense counsel could well have determined that he could develop this evidence to illustrate that there is, in fact, disability; that it has existed since the time of the accident in 1961 or 1962, and has been a continuing factor in the unemployment of this defendant.

Another cogent reason appears for disapproving the court's refusal to permit the defendant to change his plea. The Colorado Rules of Criminal Procedure provide that the court shall not accept a plea of guilty without: "(1) determining that the plea is made voluntarily with *understanding of the nature of the charge,* and (2) explaining fully to the defendant his right to trial by jury, his right to counsel, and the possible penalty provided by statute for the offense charged." The record of the arraignment proceedings shows that the court explained No. 2 above concerning trial and counsel, but he did not explain No. 1, to-wit: "nature of the charge." True this was not a guilty plea, but in law it has the same effect as one. *Young v. People,* 53 Colo. 251, 125 Pac. 117; *Meier v. People,* 133 Colo. 338, 296 P.2d 232. We cannot be sure from this record that the nature of this plea, as well as the nature of the charge, was explained to him. For all that appears here, he may well have believed that mere non-payment was sufficient to support the charge; and that since he did not deny non-payment of support, he could not contest the charge.

Another factor which may have influenced the decision is that after entering the plea of nolo contendere the defendant "fled the jurisdiction and his bond was forfeited." The record shows that after the entry of his plea of nolo contendere and prior to his hearing on probation on September 12, 1963, he was treated in a Pueblo clinic where an electroencephalogram was performed to determine whether he had brain damage. What the results of that examination were or what they revealed was never presented to the court. The record shows that during the last three months of the time that he was "an

alleged fugitive" he was a patient at the State Hospital at Pueblo. Whether the illness which confined him to the State Hospital can be related back to cover the period in April, 1962, as well as to the attack of hepatitis in January, 1963, was never revealed to the court. Possibly, it may be a basis for a meritorious defense.

In my view it sufficiently appears that the failure to support may not be willful, but may be due to disability, and that it is an abuse of discretion for the trial court to deny this defendant effective use of counsel. If the change of plea were allowed, and thereafter on the trial of the case there was a finding of guilt under all of the circumstances, then substantial justice would be done, and no harm would result to the defendant. If the trial would result in his acquittal, even more so the ends of justice would be served and counsel's opinion that the plea of nolo contendere should not have been entered would be vindicated. Denial to this defendant of his right to a trial is, in fact, a denial of his right to counsel as well.

MR. JUSTICE PRINGLE joins in this dissent.