James M. CRUMB, Jr., Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 08SC884.

Supreme Court of Colorado,
En Banc.

April 26, 2010.

The Noble Law Firm, LLC, Antony M. Noble, Lakewood, Colorado, Attorney for Petitioner.

John W. Suthers, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

In this appeal, we review the court of appeals' decision in *People v. Crumb*, 203 P.3d 587 (Colo.App.2008), which held that the defendant was not entitled to withdraw his guilty pleas based on the trial judge's participation in plea discussions. We reverse. We hold that the trial court abused its discretion when it failed to permit the defendant to withdraw his guilty pleas.

In this case, the trial judge stepped out of his role as a fair and impartial arbiter by making participatory comments. These comments appear to have influenced the defendant's decision to reconsider his earlier rejection of the offered plea and his ultimate decision to plead guilty. The judge gave the defendant advice, saying "let me talk to you as a human being," and then pressured the defendant to accept a plea agreement by comparing the maximum sentence the defendant faced if convicted with a potentially more lenient sentence if the defendant accepted a plea agreement. The judge departed further from his judicial role by telling the defendant that he was "not going to be a happy judge" if no plea deal were reached. Given these participatory comments, we hold that the trial court abused its discretion by denying the defendant's motion to withdraw his guilty pleas. Accordingly, we reverse the court of appeals' decision and remand this case to that court to be returned to the trial court for proceedings consistent with this opinion.

## II. Facts and Proceedings

In twelve different cases, the prosecution charged the defendant James Crumb with approximately fifty counts of felony theft, forgery, criminal impersonation, and offering a false instrument for recording. The prosecution also sought enhanced penalties under the Habitual Criminal Statute, section 18–1.3–801, C.R.S. (2005).

The charges stemmed in part from alleged misconduct beginning in 2000. Because numerous defense attorneys withdrew from representing the defendant, the trial court pushed the proceedings back until 2005. Ul-

timately, the trial judge permitted the defendant to proceed pro se, appointed advisory counsel to assist with the defense, and set trial in the first case for Monday, October 24, 2005. On the Friday before trial, the judge began a pretrial conference by asking if the parties were going to trial. The prosecution said yes. The defendant said yes.

Without prompting from either side, the judge initiated a discussion concerning the status of plea negotiations and confirming that, once the pretrial conference was over, all offers by the prosecution would be withdrawn. The judge said:

> I know there's been a lot of discussion about dispositions in this case. I'm not going to interject myself into that, except to say this. It's my understanding and I'm assuming [the prosecutor] will confirm this, that if we go through the pretrial conference and get ready for trial, all the offers are off the table and things are done.

The defendant stated that he was ready to go to trial because he felt that he had no choice. The judge then told the defendant that he had two options: to take the plea offered by the prosecution or to proceed to trial. The judge stated he did not want to know the details of the offer: "I don't even know what [the offer] is and I don't want to be told." Then the judge informed the defendant that in Monday's trial he faced eight class-four felonies, each of which carried a maximum sentence of six years. Referring to the habitual criminal charges, the judge explained that if the defendant were convicted, then the judge would have no choice but to sentence the defendant to four times the maximum sentence for each felony.

The defendant's advisory counsel told the court that the defendant would like more time to consider his decision, and the court took a recess. Three hours later, the judge resumed the pretrial conference. The defendant stated that he would accept a plea bargain if the habitual crime counts were dismissed. The judge responded by saying that he could not get involved in plea negotiations.

The prosecutor then told the court that the defendant was unwilling to plead guilty and that the defendant had rejected existing plea offers. Addressing the judge, the prosecutor stated, "We've explored a number of options, Your Honor, including disposition of some cases and not others, but ultimately there is an offer on the table and it has not been accepted."

At this point the trial judge made several expository statements directed at the defendant. He said that he was talking to the defendant "more as a human being than as a judge" and repeated what he had said earlier—that the defendant had a decision to make. The judge then reiterated his earlier statement that he could exercise sentencing discretion only if the defendant accepted a plea bargain. The judge's statements were as follows:

> Let me just say this. This is more as a human being than as a judge. You [have] a lot on your plate. I understand it, but you've also had a lot of time to think about it. It's only fair that—we took a lot of time yesterday afternoon, and I'm trying to be patient and I'm not being impatient now, but it is unfair for me to do anything that makes [the prosecutor] have to keep delaying his preparation. If we're going to go to trial, he's got a right to prepare for his case, just as you do. If you're not going to go to trial, that's a different ball of wax; but, you know, *you're facing significant—you're facing the potential of significant time, Mr. Crumb, either way. I mean, we understand that, but if—if there's any discretion that can be exercised, and I'm not promising you anything when I say this, that discretion obviously exists in the context of a disposition. It will not exist if you are convicted and then habitual criminal charges kick in.* There is just nothing. I'm rubber stamping what the Legislature tells me to do at that point.

(Emphases added).

Immediately thereafter, the defendant and advisory counsel engaged in an off-record discussion. When their exchange was finished, advisory counsel stated, "I think we have a deal." The judge then directed the parties to return later in the day. Before recessing, however, the judge stated, "I'm

not going to be a happy judge if the People tell me we don't have a deal."

The proceedings resumed at around 4:30 p.m. that day. The defendant agreed to plead guilty to eight charges and to receive a sentence between forty and ninety years in exchange for the dismissal of the other cases and charges against him. The judge conducted a providency advisement in which the defendant confirmed that he reviewed the documents carefully and completely and that he understood them. The judge found that the defendant's guilty pleas were made freely, voluntarily, knowingly, and without coercion.

On December 9, 2005, forty-nine days after the pleas had been entered, the defendant filed a motion to withdraw his guilty pleas. He alleged that his pleas were "involuntary and made without his understanding and informed consent." The same judge who accepted the guilty pleas heard arguments on this motion in a hearing on January 6, 2005. At this hearing, the defendant argued that he should be allowed to withdraw his plea because he was not given enough time to evaluate the plea agreement. According to the defendant, when he first received the plea agreement, he told advisory counsel that he disagreed with it and advisory counsel's response was that the court would be unhappy with this decision. The defendant said:

> At about 4:40, advisory counsel … came down to the court tank with the plea agreement, and at that time *I commented to him that I wasn't in agreement to plead guilty. And he commented back to—his rebuttal was—the court was going to be unhappy with that,* so we began to review the plea agreement. And the moment that I received the plea agreement in my hand, the deputies came and said that I was wanted in court.

(Emphasis added). The defendant also said that he had been intimidated by the process and had felt afraid to tell the judge that he did not want to accept the offer. The judge replied, "I was not then and I am not now angry at you, nor did I threaten you in any

way, shape, or form by anything I said." The judge denied the defendant's motion to withdraw his guilty pleas and continued the sentencing hearing to provide more time for counsel to review the presentence report.

Immediately following this hearing, the judge recused himself for reasons unrelated to this appeal, and a second judge conducted the final sentencing hearing. The defendant submitted a second motion to withdraw his guilty pleas, again alleging his guilty pleas were "involuntary and made without [his] understanding and informed consent."[1] The second judge denied this motion and sentenced the defendant to eighty years in the Department of Corrections. The defendant appealed.

The court of appeals held that the judge's comments violated the proscription against judicial participation in plea discussions. *Crumb,* 203 P.3d at 592. Nevertheless, the court of appeals held that the error in this case was harmless because the parties had been negotiating a multiple-case agreement for several weeks; the "happy judge" comment was made on the afternoon of the last day before trial was to start and after a tentative agreement had been reached; the trial court remained impartial and did not encourage a particular plea bargain; and the trial court "merely explained" the difference between discretionary sentencing and habitual criminal sentencing. *Id.*

Judge Román dissented in part because he believed that the trial judge's participation was not harmless. He noted that the trial judge acted improperly by suggesting that he could exercise discretion in the sentence if the defendant took a plea bargain but not if the defendant went to trial and was convicted. *Id.* at 594 (Román, J., dissenting). Given that a trial judge has significantly more power than a defendant, this suggestion left Judge Román with "grave doubt" as to the fairness of the proceedings. *Id.* As a result, he thought the defendant's motion to withdraw his guilty pleas should have been granted. *Id.*

---

1. The defendant also alleged that the judge had a conflict of interest because of a connection with one of the victims. The court of appeals rejected this claim. *Crumb,* 203 P.3d at 592. The defendant did not raise this issue in his petition for certiorari, and therefore, we do not address it.

We granted certiorari to review whether the defendant should be allowed to withdraw his guilty pleas because of the trial judge's participation in plea discussions.[2]

### III. Analysis

### A. Standard of Review

The Colorado Rules of Criminal Procedure permit a defendant to make a motion to withdraw a guilty plea before the sentence is imposed. Crim. P. 32(d). The defendant has the burden of establishing a "fair and just" reason for withdrawing a guilty plea. *People v. Chippewa*, 751 P.2d 607, 609 (Colo.1988). The trial court has discretion to determine whether the defendant has demonstrated a fair and just reason. *Id.* We will not overturn the denial of a motion to withdraw a guilty plea unless the trial court abused its discretion. *Id.* at 607; *People v. Gutierrez*, 622 P.2d 547, 559 (Colo. 1981); *People v. Martinez*, 188 Colo. 169, 172, 533 P.2d 926, 928 (1975).[3] To determine whether the defendant has shown a fair and just reason for withdrawing a guilty plea and whether the trial court abused its discretion in denying the defendant's motion, we consider a non-exclusive list of factors, including whether the prosecution would be prejudiced by the withdrawal of the guilty plea, *Chippewa*, 751 P.2d at 611, whether the defendant promptly moved to withdraw the guilty plea,

*id.*, and whether the defendant has shown that "justice will be subverted" if the motion is denied, *Maes v. People*, 155 Colo. 570, 575, 396 P.2d 457, 459 (1964). A defendant can show that justice will be subverted where, among other reasons, "a plea was entered through fear, fraud, or official misrepresentation or where it was made involuntarily for some reason." *Id.*

### B. Participation in Plea Discussions

Both the Colorado Rules of Criminal Procedure and the Colorado Revised Statutes provide that "the trial judge *shall not* participate in plea discussions." § 16–7–302(1), C.R.S. (2005) (emphasis added); Crim. P. 11(f)(4) (emphasis added). Both the rule and the statute carve out an exception for the trial judge to participate when the parties arrive at a tentative plea bargain and ask the trial judge to indicate whether he or she will grant concessions contemplated by the plea agreement regarding the charges or the sentence. § 16–7–302(2); Crim. P. 11(f)(5).

Colorado's prohibition against judicial participation in plea negotiations is consistent with the American Bar Association's (ABA) Standards for Criminal Justice. *ABA Standards for Criminal Justice: Pleas of Guilty* 127–28 (3d ed. 1999).[4] As part of this prohibition, Standard 14–3.3(c) directs trial judges to refrain from influencing the defendant to

---

**2.** More specifically, we granted certiorari on the following issue:

> Whether a trial judge's participation in plea discussions, in violation of section 16–7–302(1), C.R.S. (2008), and Crim. P. 11(f)(4) is harmless error where the defendant had rejected previous plea offers and had only agreed to plead guilty after the trial judge advised him of the sentence that would be imposed if he were found guilty at trial and compared that with the sentencing consequences of pleading guilty.

**3.** The court of appeals cited two cases for the proposition that Rule 11 violations are reviewed for plain or harmless error. *Crumb*, 203 P.3d at 591 (citing *Young v. People*, 30 P.3d 202, 207 (Colo.2001) and *Dawson v. People*, 30 P.3d 213, 216 (Colo.2001)). The defendant argues that the harmless error doctrine applies in this case, whereas the prosecution argues that the plain error doctrine applies. We hold that neither doctrine is appropriate here, as Crim. P. 32(d) motions are reviewed for abuse of discretion.

*Chippewa*, 751 P.2d at 609. The two cases cited by the court of appeals involve Crim P. 35(c) motions for post-conviction relief after a sentence has been imposed. *Young* 30 P.3d at 205; *Dawson* at 30 P.3d at 216. Here, the defendant filed his motion to withdraw his guilty pleas *before* the trial court imposed a sentence, so his motion is properly categorized as a Crim. P. 32(d) motion. We are not aware of any Colorado Supreme Court case that has engaged in either harmless or plain error review of Crim P. 32(d) motions.

**4.** ABA Standard 14–3.3(d) parallels the Colorado rule:

> A judge should not ordinarily participate in plea negotiation discussions among the parties. Upon the request of the parties, a judge may be presented with a proposed plea agreement negotiated by the parties and may indicate whether the court would accept the terms as proposed and[,] if relevant, indicate what sentence would be imposed.

*Id.* at 128.

accept a particular offer: "The judge should not through word or demeanor, either *directly or indirectly,* communicate to the defendant or defense counsel that a plea agreement should be accepted or that a guilty plea should be entered." *Id.* at 128 (emphasis added). The rationale supporting this rule is that "[it] protects the constitutional presumption of innocence, and avoids placing judicial pressure on the defendant to compromise his or her rights." *Id.* at 134.

▓▓▓ The judge plays an essential role to ensure the impartial and objective administration of criminal justice.[5] When a judge becomes involved in plea discussions, the judge is no longer a judicial officer or a neutral arbiter. *See United States v. Werker,* 535 F.2d 198, 203 (2d Cir.1976), *cert. denied,* 429 U.S. 926, 97 S.Ct. 330, 50 L.Ed.2d 296 (1976). Judicial participation transforms the judge from a neutral arbiter to an advocate for the resolution the judge has suggested to the defendant. When the judge does participate, he or she brings to bear the full force of the judicial office. *United States ex rel. Elksnis v. Gilligan,* 256 F.Supp. 244, 254 (S.D.N.Y.1966); *People v. Clark,* 183 Colo. 201, 203, 515 P.2d 1242, 1243 (1973). Because of the disparity in power between the defendant and the judge, judicial participation in plea negotiations undermines the fundamental fairness of the proceedings. *Clark,* 183 Colo. at 203–04, 515 P.2d at 1243. Hence, numerous jurisdictions have ruled that a judge cannot take certain actions, such as threaten a defendant with a more severe sentence if the defendant refuses to plead guilty, *id.,* 183 Colo. at 203, 515 P.2d at 1242–43; make a tacit offer of leniency, even if that offer is accompanied by caveats, *see, e.g., United States v. Baker,* 489 F.3d 366, 375 (D.C.Cir.2007); compare the potential consequences of pleading guilty versus going to trial, *United States v. Cano–Varela,* 497 F.3d 1122, 1133 (10th Cir.2007); or become a legal advisor to the defendant, *id.,* at 1134; *see also United States v. Bradley,* 455 F.3d 453,

462 (4th Cir.2006) (finding error where the trial court, among other comments, advised the defendants they might "be better off pleading to the indictment").

▓▓▓ That being said, so long as the judge remains impartial, the rule against judicial participation must not be applied so rigidly as to interfere with the everyday operations of the courts. *See United States v. Frank,* 36 F.3d 898, 903 (9th Cir.1994) ("The rule against judicial participation in plea bargaining protects the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge. It does not establish a series of traps for imperfectly articulated oral remarks."). A judge may make observations about the evolving legal posture of a case and may inquire as to whether parties wish to consummate a plea agreement. *People v. Venzor,* 121 P.3d 260, 264 (Colo.App.2005). In addition, a judge may make case management decisions without violating the rule against judicial participation in plea negotiations. *Cano–Varela,* 497 F.3d at 1132–33; *United States v. Cannady,* 283 F.3d 641, 645 (4th Cir.2002); *see also People v. Jasper,* 17 P.3d 807, 814 (Colo. 2001) (affirming a trial court's decision to reject a plea agreement because it was outside the plea-cutoff deadline). Consistent with the purposes of the rule, a judge may explain to the defendant that he or she has a decision to make and may impose a deadline for making that decision, but the judge cannot influence the defendant to accept or reject a *particular* plea bargain.

### C. Application

▓▓▓ We next address the trial judge's conduct in this case. As we explain, the trial judge alternated between being an impartial observer and being an active participant in the plea negotiations.

At the beginning of the pretrial conference, the judge told the defendant that he had a decision to make and that he could not keep delaying the proceedings because the

---

**5.** The Federal Rules of Criminal Procedure are similar to the Colorado Rules of Criminal Procedure with respect to judicial participation in plea discussions. *See* Fed.R.Crim.P. 11(c). The federal rule provides that "[t]he Court must not

participate in these discussions." *Id.* Because of the similarity between the federal and Colorado rules, we draw support from federal law in our analysis.

trial was scheduled to start the following Monday. In addition, the judge reiterated that he could not get involved in negotiations and voiced his desire to remain ignorant of what the plea offers entailed. The judge also commented that he had no power to force the prosecution to offer certain concessions, such as dropping enhanced penalties under the habitual criminal statute. Based on these comments, we conclude that, at times, the judge attempted to remain impartial and move the case forward within the bounds of section 16–7–302 and Crim. P. 11(f)(4).

At other times, however, the judge stepped out of his role as a fair, neutral, and impartial arbiter. For example, by saying, "[t]his is more as a human being than as a judge," the judge removed himself from his judicial office and placed himself in the position of a counselor.

The judge also gave legal advice to the defendant by comparing the potential sentencing consequences of pleading guilty with the consequences of going to trial. He indicated that the defendant's only hope for a lighter, discretionary sentence would come if the defendant accepted a plea offer. The judge stated he would not have any discretion if the defendant did not accept a plea offer.[6] This statement implied that, if the defendant were convicted of habitual criminal counts, then the defendant would have faced a potential mandatory sentence of 192 years. "A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence." *Gilligan,* 256 F.Supp. at 254. When faced with the stark contrast between potential sentences, a defendant may be more susceptible to influence from a judge. *See id.; see also Cano–Varela,* 497 F.3d at 1124 (finding error when trial judge compared penal consequences of pleading guilty versus going to trial).

The judge repeatedly emphasized that he could exercise sentencing discretion if the defendant pleaded guilty, which suggests that the judge was making a promise of leniency. The judge stated: "if there is any discretion that can be exercised, and I'm not promising you anything when I say this, that discretion obviously exists in the context of a disposition." The defendant could reasonably believe, despite the judge's comment that he was not promising anything, that the judge made a gentleman's agreement or was looking out for the defendant's best interests. *See United States v. Baker,* 489 F.3d at 375 (finding plain error where the trial judge repeatedly referred to a "year and a day" sentence that he gave to another defendant charged with a similar crime and stated, "I would probably be just as consistent here").

The judge further departed from his judicial role when he said, "I'm not going to be a happy judge if the people tell me we don't have a deal." One interpretation of this statement is that the judge was communicating that he did not want the defendant to continue delaying the proceedings. A different interpretation is that the judge was exerting pressure on the defendant to accept the prosecution's offer, irrespective of the terms of the offer and the wishes of the defendant. Whatever the judge meant by these comments, however, is less important than how those words could be perceived. *See Werker,* 535 F.2d at 202 ("Regardless of the judge's objectivity, it is the defendant's perception of the judge that will determine whether the defendant will feel coerced to enter a plea."). A person hearing the judge's statement could reasonably interpret that statement as pressure to take the deal offered, or any deal for that matter. At no time should a judge influence a defendant to take any particular deal or indicate a preference for a plea disposition rather than a trial. Hence, like the court of appeals, we conclude that the trial judge committed error by making participatory comments in plea negotiations.

█ We turn to whether the trial court abused its discretion in denying the defendant's motion to withdraw his guilty pleas. To determine whether the defendant has

---

6. The judge's comments are legally incorrect. A trial judge retains some discretion to sentence a defendant to concurrent or consecutive terms when the charges are supported by identical evidence and multiple victims are involved. § 18–1–408(3), C.R.S. (2005); *People v. Montgomery,* 669 P.2d 1387, 1391 (Colo.1983).

shown a fair and just reason for withdrawing a guilty plea and whether the trial court abused its discretion in denying the defendant's motion, we consider a non-exclusive list of factors, including whether the prosecution would be prejudiced by the withdrawal of the guilty plea, *Chippewa*, 751 P.2d at 611, whether the defendant promptly moved to withdraw the guilty plea, *id.*, and whether the defendant has shown that "justice will be subverted" if the motion is denied, *Maes*, 155 Colo. at 575, 396 P.2d at 459.

The first two factors lean in favor of the prosecution in this case. The prosecution would experience some prejudice by having to prepare once again for trial and having to reschedule witnesses to appear. Moreover, the defendant did not promptly move to withdraw his guilty pleas.[7] He filed his motion forty-nine days after he entered the guilty pleas. *Cf. Chippewa*, 751 P.2d at 611 (noting that the defendant "promptly" moved to withdraw his guilty plea when he filed the motion within seventeen days of receiving an unfavorable presentence report).

In contrast, the extent of the trial judge's comments and colloquy with the defendant undermines the fundamental fairness of the plea bargaining process. The proscription against judicial participation implicates the core function of the judicial branch, which is to administer justice in a fair and impartial manner. *Werker*, 535 F.2d at 203 ("Rule 11 implicitly recognizes that participation in the plea bargaining process depreciates the image of the trial judge that is necessary to public confidence in the impartial and objective administration of criminal justice."). The trial judge's comments appeared to influence the defendant's decision-making pro-

cess. At the beginning of the pretrial conference, the judge asked the parties if they were going to trial on the following Monday. The defendant said yes. The judge then raised the issue of plea negotiations. Later on in the proceedings, the prosecutor observed that the defendant had rejected the plea offer, saying "ultimately there is an offer on the table and it has not been accepted." After the defendant expressed his resolve to go to trial, the judge gave the defendant advice "as a human being," made a tacit offer of leniency, and stated that he would be unhappy if no deal were reached. These improper comments appear to have influenced the defendant's decision to reconsider his earlier rejection of the offered plea and his ultimate decision to plead guilty.

To allow this guilty plea to stand would run counter to the fair and impartial administration of justice. Hence, we hold that the defendant has shown a fair and just reason for withdrawing his guilty plea and that the trial court abused its discretion when it denied his motion to withdraw his guilty plea under Crim. P. 32(d).

## IV. Conclusion

Accordingly, we reverse the court of appeals' decision and remand this case to that court to be returned to the trial court for proceedings consistent with this opinion.

---

7. We note that the defendant's motion was "timely" because he made it before the sentence was imposed. Colo. R.Crim. P. 32(d); *see also*

*People v. Banks*, 190 Colo. 295, 297, 545 P.2d 1356, 1357 (1976); *People v. Hodge*, 205 P.3d 481, 483–84 (Colo.App.2008).