2023 CO 9 In Re The People of the State of Colorado, Plaintiff v. James Lee Justice. Defendant Nos. 22SA347, 22SA348
Supreme Court of Colorado, En Banc
February 27, 2023

 Original Proceedings Pursuant to C.A.R. 21 Pueblo County
 District Court Case Nos. 20CR801, 21CR137 Honorable Allison
 Ernst, Judge

 Attorneys for Plaintiff: J.E. Chostner, District Attorney,
 Tenth Judicial District G. James Poland, Chief Trial Deputy
 District Attorney David Dingess, Deputy District Attorney
 Pueblo, Colorado

 Megan
 Rasband, Special Deputy District Attorney, Senior Assistant
 Attorney General Denver, Colorado

 Attorney for Defendant in 22SA347: Michael S. Emmons Pueblo,
 Colorado

 Attorneys for Defendant in 22SA348: Megan A. Ring, Public
 Defender Ian J. King, Deputy Public Defender Pueblo, Colorado

 Attorneys for Respondent Pueblo County District Court: Philip
 J. Weiser, Attorney General Peter G. Baumann, Assistant
 Attorney General Denver, Colorado

 JUSTICE SAMOUR delivered the Opinion of the Court, in which
 CHIEF JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE
 HOOD, JUSTICE GABRIEL, JUSTICE HART, and JUSTICE BERKENKOTTER
 joined.

 OPINION

 SAMOUR
 JUSTICE

 ¶1
 No two ways about it-mediation is one of the most effective
 tools for conflict resolution in American jurisprudence. But
 may a state trial court in Colorado properly order mediation
 in a criminal case? In a word, no.

 ¶2
The defendant, James Lee Justice, stands charged with
 multiple offenses in four felony cases. The People extended
 him a global plea bargain offer, but he rejected it. Unhappy
 that the People would not sweeten the offer, Justice filed a
 motion asking the district court to compel mediation. The
 court granted the motion and ordered mediation over the
 People's objection. As part of its order, the court
 required good-faith participation and threatened to impose
 sanctions for lack of compliance. The People then brought
 petitions invoking our original jurisdiction in two of the
 cases, and we issued rules to show cause.

 ¶3
 Because the district court lacked the authority to require
 the parties to mediate in these criminal cases, and because
 the mediation order arguably involved the court in the plea
 bargaining process, we conclude that the court erred.
Therefore, notwithstanding the court's good intentions,
 we make absolute the rules to show cause.

 I.
Facts and Procedural History

 ¶4
The People have brought four felony cases against Justice. He
 faces numerous charges, including multiple counts of each of
 the following: attempted

 first degree murder, first degree assault, attempted first
 degree assault, and second degree assault. In addition, he is
 charged with one count of each of the following: use of
 explosives or incendiary devices, possession of an explosive
 or an incendiary device, misdemeanor assault, and resisting
 arrest. While Justice was on bond and contemplating the
 People's global plea offer related to the first three
 cases, he was arrested on the fourth case. After charges were
 filed in the fourth case, the People conveyed a modified (and
 less favorable) global plea offer. It appears that, like its
 predecessor, this offer included a recommendation concerning
 the charges filed and/or the applicable sentences in exchange
 for Justice's guilty plea to one or more offenses.
Justice rejected the modified offer. Thereafter, his family
 hired private counsel to represent him in one of the cases. A
 deputy public defender remained counsel of record in the
 other three cases.

 ¶5
 Because the People refused to tender a more lenient global
 offer, Justice's private counsel filed a motion seeking
 compulsory mediation in all four cases. He argued that there
 were "a number of serious charges," some of which
 carried mandatory prison sentences, and that
 "[m]ediation would create the opportunity for all
 parties to have a frank exchange regarding their various
 position[s] and allow an objective [person] to give input on
 possible ways those positions might be reconciled." The
 deputy public defender involved in Justice's
 representation supported the request for mediation.

 ¶6
 During a hearing held the next day, the People objected to
 the motion. They asserted that whether to participate in
 mediation "should be left to the parties." The
 court disagreed, however, and orally ordered mediation. It
 explained that it had the authority to do so, and that, given
 the number of cases pending and jury trials set, it was
 appropriate "to at least attempt" mediation. The
 court clarified that, while it was not requiring the People
 to extend an offer, it did expect them to make "a good
 faith attempt to see if there's some way to work these
 cases out." As part of its ruling, the court shared with
 the parties the name of the senior judge it had selected to
 act as mediator.

 ¶7
 About a week later, the People filed a motion to vacate the
 mediation order. They contended that the order violated the
 separation of powers doctrine enshrined in article III of the
 Colorado Constitution. More specifically, the People
 maintained that it was improper for the court, which is part
 of the judicial branch, to interfere with their office, which
 is part of the executive branch. The mediation order,
 protested the People, encroached on the executive
 branch's turf. Additionally, the People argued that the
 court had no authority to order them to participate in
 "mediation plea discussions." Rather, urged the
 People, under Colorado law, they "may," but are not
 required to, "engage in plea discussions for the purpose
 of reaching a plea agreement." § 16-7-301(1),
 C.R.S. (2022).

 ¶8
 Justice countered that the mediation order rested on firm
 ground because it neither mandated an offer nor dictated the
 parameters of any offer the People might extend. Instead,
 said Justice, the order was simply procedural, and
 "[s]ince the results of any particular mediation"
 would have to be approved by both sides, "no one's
 discretion [was] interfered with, including the
 prosecutor's." Continuing, Justice pointed out that
 the People's motion failed to cite to any authority
 directly on point while ignoring that "mediations have
 been ordered in criminal cases for decades in Colorado."

 ¶9
The court denied the motion to vacate in a written order. It
 found inapposite a case cited by the People, which dealt with
 an order requiring the prosecution to administer a polygraph.
In contrast to the order challenged in that case, observed
 the court, the mediation order here was not "directing
 [the] investigation or prosecution" of a case. The court
 then doubled down on its rationale for ordering mediation-the
 possibility that the parties could agree on a plea bargain,
 thereby saving extensive resources and time:

The Court notes in this matter and the companion case[s],
 there will be significant judicial resources used in trying
 the matters, as well as the time of community members to
 serve as jurors. Additionally, the Court is aware of the
 staffing concerns of the District Attorney's office.
Finally, it is the Defendant that is seeking mediation, [and]
 while not any guarantee of settlement, it at least indicates
 a willingness of the Defendant to consider pleading guilty.

 ¶10
 Although acknowledging that there was "no guarantee of
 success," the court indicated that it expected the
 parties "to mediate in good faith." In the
 court's view, good-faith mediation was "worth a
 morning or afternoon of the time of the parties." The
 court then instructed the parties to promptly schedule
 mediation.

 ¶11
 Shortly after the court issued its written order, the
 mediator sent an email to all counsel (with a copy to the
 court's judicial assistant) to confirm the date and time
 of the mediation session. In the same email, he asked that
 each party submit "a confidential settlement
 statement," along with:

[W]hatever you think helpful to an outsider, including any
 history of prior negotiations in th[ese] case[s], what you
 perceive to be your strengths and weaknesses, as well as what
 you perceive to be the strengths or weaknesses of the other
 side (one may answer the other). Any synopsis of facts that
 you deem appropriate is also appreciated. . . . In the past,
 I have been given a disc of discovery; that can also be
 provided.

 ¶12
 Before the scheduled mediation, the People filed two C.A.R.
 21 petitions invoking our court's original
 jurisdiction.[1] Hours later, the district court issued a

 mediation referral order in all four cases, which it made
 effective as of the date of its written order (approximately
 a month earlier).

 ¶13
The district court again found that these cases were
 "appropriate for mediation." It then identified for
 the first time the basis of its purported authority to order
 mediation: section 13-22-311, C.R.S. (2022), which is part of
 the Dispute Resolution Act.

 ¶14
The court reiterated that it was "not in any way
 directly or indirectly" requiring the parties to reach a
 plea agreement. Rather, stated the court, it was simply
 requiring the parties to participate in mediation, which it
 characterized as "a method by which the parties
 themselves help to resolve their issues" relating to
 these cases. The court then announced that mediation would be
 conducted in a vacant courtroom or conference room at the
 courthouse, with all expenses paid by the judicial district.

 ¶15
 Of particular relevance to the People's concerns here,
 and consistent with the mediator's email, the court
 directed each party to "prepare and provide to the
 mediator . . . a confidential settlement statement" and
 documents counsel believed "may be useful for the
 mediator to understand [the] strengths and weaknesses of
 either party." Further, counsel were prohibited from
 changing or cancelling the mediation session without a
 finding of "good cause" by the court. And the court

 reminded the parties that the referral order was a court
 order and that they were subject to sanctions for failing to
 comply with it.

 ¶16
We issued a rule to show cause in response to each C.A.R. 21
 petition filed by the People. We explain next why we are
 exercising our original jurisdiction in these two cases.

 II.
Original Jurisdiction

 ¶17
 C.A.R. 21(a)(1) gives our court "sole discretion to
 exercise our original jurisdiction" under the Colorado
 Constitution. People v. Cortes-Gonzalez, 2022 CO 14,
 ¶ 21, 506 P.3d 835, 842. But that discretion isn't
 unfettered. Relief under C.A.R. 21(a)(1) "is
 extraordinary in nature" and "will be granted only
 when no other adequate remedy . . . is available."
C.A.R. 21(a)(1). Consequently, in the past, we have
 considered such relief appropriate "when an appellate
 remedy would be inadequate, when a party may otherwise suffer
 irreparable harm, [or] when a petition raises 'issues of
 significant public importance.'" People v.
 Kilgore, 2020 CO 6, ¶ 8, 455 P.3d 746, 748
(citations omitted) (quoting Wesp v. Everson, 33
 P.3d 191, 194 (Colo. 2001)).

 ¶18
The People argue that they have no adequate appellate remedy
 and that they have raised a novel issue of significant public
 importance. We agree and therefore conclude that these are
 appropriate cases to exercise our original jurisdiction.

 ¶19
 First, the People are without any adequate appellate remedy.
A direct appeal affords the People no avenue to seek redress
 because they have made clear that they do not wish to engage
 in mediation. Requiring the People to raise the issue on
 direct appeal, after the proverbial ship has sailed and
 compulsory mediation has occurred, would provide no relief.

 ¶20
 Second, the People's petition raises a question of first
 impression that has significant public importance. Our
 decision has the potential to impact many criminal cases
 throughout the state. Multiple judicial districts appear to
 have ordered mediation in criminal cases in the past. By
 private defense counsel's own admission, he has
 participated in court-ordered mediation in criminal cases in
 two other judicial districts (the Third and Sixteenth
 Judicial Districts). And, in 2008, our court denied a C.A.R.
 21 petition that presented the question of whether a district
 court in the Fourth Judicial District had properly ordered
 mediation in a criminal case. See People v. Rangel
(Colo. No. 08SA256, Aug. 1, 2008) (unpublished order). So,
 including the two cases before us, which are from the Tenth
 Judicial District, the People are objecting to a past or
 present practice in as many as four judicial districts. And
 neither our court nor the court of appeals has ever resolved
 this issue. We believe that the time has come for us to speak
 on it.

 III.
Analysis

 ¶21
We begin by setting forth the governing standard of review.
We then address whether the district court had the authority
 to order the parties to participate in mediation in this
 criminal case. Because we conclude that it did not, and
 because we also conclude that the mediation
 order[2] arguably involved the court in the plea
 bargaining process, we make absolute the rules to show cause.
Given this resolution, we need not, and thus do not, decide
 whether the court violated the separation of powers doctrine.

 A.
Governing Standard of Review

 ¶22
 Whether the district court properly required the parties to
 participate in mediation is a question of law. See
 Kilgore, ¶ 13, 455 P.3d at 749 (explaining that
 whether the district court had properly ordered defense
 exhibits disclosed before trial was a legal question). We
 review legal questions de novo. Id.

 B.
The District Court Lacked the Authority to Order
 Mediation

 ¶23
The district court and the parties agree, as do we, that
 section 16-7-301, which is titled "Propriety of plea
 discussions and plea agreements," applies in

 criminal cases. Section 16-7-301(1) provides that the People
"may engage in plea discussions for the purpose of
 reaching a plea agreement" if "it appears that the
 effective administration of criminal justice will thereby be
 served."

 ¶24
 That the People are vested with the discretion to engage in
 plea discussions necessarily means that they are vested with
 the discretion to refrain from engaging in plea discussions.
Indeed, there are situations in which the People may decide,
 in their discretion, that they have to abstain from
 engaging in such discussions-i.e., where, in their
 estimation, plea discussions would not serve the effective
 administration of criminal justice. Id. But either
 way, the decision to have or forgo plea discussions is the
 People's and the People's alone. It follows that a
 trial court can neither force the People to engage in plea
 discussions nor prevent the People from engaging in plea
 discussions.

 ¶25
 Further, when the People do decide to participate in plea
 discussions, they have the discretion to determine what type
 of offer to make. § 16-7-301(2). The People have
 multiple options available to them in formulating an offer
 based on the circumstances present. See §
 16-7-301(2)(a)-(f). As pertinent here, the People may decide
 to make a favorable recommendation concerning the charges
 filed and/or the applicable sentences in exchange for the
 defendant's guilty plea to one or more offenses. §
 16-7-301(2)(a)-(b). Of course, the defendant may reject any
 offer made-it's the defendant's absolute prerogative
 to do so. What the

 defendant cannot do is enlist the court's assistance via
 an order for mediation to try to force the People to extend
 an offer or to consider a more favorable offer.

 ¶26
 When the People extend an offer in a case, the court has no
 role in the process. See generally §
 16-7-301(2). That is, a court has no more authority to
 influence an offer extended by the People than it does to
 compel the People to engage in plea discussions in the first
 place. Both are matters within the People's sole
 discretion. § 16-7-301(1)-(2).

 ¶27
 Significantly, a neighboring statutory provision, section
16-7-302(1), C.R.S. (2022), makes explicit that which is
 clearly implicit in sections 16-7-301(1)-(2): "The trial
 judge shall not participate in plea
 discussions."[3] The words "shall not" convey a
 "mandatory command." Pearson v. Dist. Ct.,
 924 P.2d 512, 517 (Colo. 1996).

 ¶28
 The impetus for the proscription in section 16-7-302(1) is
 clear: Judicial participation in the plea bargaining process
 "undermines the fundamental fairness of the
 proceedings." Crumb v. People, 230 P.3d 726,
 731 (Colo. 2010). "When a judge becomes involved in plea
 discussions, the judge is no longer a judicial officer or a
 neutral arbiter." Id. Such involvement is
 problematic because the judge

"plays an essential role to ensure the impartial and
 objective administration of criminal justice."
Id.

 ¶29
 Consistent with sections 16-7-301(1)-(2) and 16-7-302(1), we
 have recognized that "the People, not the court, may
 offer the defendant the opportunity to plead guilty" to
 an added charge "as part of a plea agreement."
People v. Mazzarelli, 2019 CO 71, ¶ 31, 444
 P.3d 301, 309. Equally on point, the court of appeals has
 observed that the pursuit of "plea negotiations in
 criminal cases is committed to the executive authority of the
 prosecution." People v. Lewis, 671 P.2d 985,
 988 (Colo.App. 1983) (relying on § 16-7-301(1)); see
 also Crumb, 230 P.3d at 730 ("Both the Colorado
 Rules of Criminal Procedure and the Colorado Revised Statutes
 provide that 'the trial judge shall not
 participate in plea discussions.'") (quoting §
 16-7-302(1); Crim. P. 11(f)(4)).[4]

 ¶30
The district court and Justice, however, rely on section
 13-22-311(1) of the Dispute Resolution Act. That reliance is
 misplaced.

 ¶31
 First, section 13-22-311, titled "Court referral to
 mediation-duties of mediator," states at the beginning
 of subsection (1) that "[a]ny court of record may,

 in its discretion, refer any case for mediation services or
 dispute resolution programs." But this statute is part
 of Title 13 and has no application in criminal cases. The
 "Colorado Code of Criminal Procedure" resides in
 Title 16 of the Colorado Revised Statutes. See
§ 16-1-101(1), C.R.S. (2022). The "Colorado
 Criminal Code" is domiciled in Title 18 of the Colorado
 Revised Statutes. See § 18-1-101(1), C.R.S.
(2022). And our "Vehicles and Traffic" laws are
 parked in Title 42 of the Colorado Revised Statutes. There is
 no provision regarding dispute resolution programs, let alone
 mediation, in Titles 16, 18, and 42.

 ¶32
 Second, the contents that follow the first sentence of
 section 13-22-311(1) bolster our conclusion. For example,
 subsection (1) carves out an exception: The court is
 prohibited from requiring mediation where one of the parties
 objects to mediation and claims to have "been the victim
 of physical or psychological abuse by the other party."
§ 13-22-311(1). This exception makes sense in civil
 cases; not so much in criminal cases. In many criminal cases,
 the named victim alleges to have suffered physical or mental
 abuse at the hands of the defendant. But the named victim
 isn't a party in any criminal case; the People and the
 defendant are the parties in criminal cases. And because the
 People are never "the victim of physical or
 psychological abuse by the other party," this exception
 would have no application in criminal cases.

 ¶33
 There's more. Subsection (1) allows the court to
 "exempt from referral any case in which a party files .
 . . a motion objecting to mediation and demonstrating
 compelling reasons why mediation should not be ordered."
Id. The only example of a compelling reason provided
 is "that the costs of mediation would be higher than the
 requested relief and previous attempts to resolve the issues
 were not successful." Id. Applying this reason
 in the criminal arena is illogical, as the requested relief
 in a criminal case is never money.

 ¶34
 Third, and perhaps most concerning, the approach suggested by
 the district court and Justice would set section
 13-22-311(1), on the one hand, and sections 16-7-301(1)-(2)
and 16-7-302(1), on the other, on a collision course. As we
 pointed out earlier, sections 16-7-301(1)-(2) and 16-7-302(1)
 grant the People sole discretion to determine whether to have
 plea discussions, and, when they decide to have such
 discussions, to determine what offer to tender to the
 defendant. To hold now that section 13-22-311(1) authorizes
 trial courts to order mediation and to thereby require the
 People to have plea discussions or to consider a different
 offer would directly contravene sections 16-7-301(1)-(2) and
16-7-302(1). This we may not do. We must strive to construe
 statutes harmoniously, "so as to avoid any conflict
 between them." Loza v. State Farm Mut. Auto. Ins.
 Co., 971 P.2d 251, 252 (Colo.App. 1998); see also
A.M. v. A.C., 2013 CO 16, ¶ 8, 296 P.3d 1026, 1030
("We favor

 interpretations that produce a harmonious reading of the
 statutory scheme and eschew constructions that create
 inconsistency.").

 ¶35
 Here, the district court erred in relying on section
 13-22-311(1) to order mediation. For the reasons we have
 articulated, section 13-22-311(1) has no application in this
 criminal case. More importantly, the mediation order violated
 sections 16-7-301(1)-(2) and 16-7-302(1). True, the court was
 clear that it was not requiring the People to make an offer.
But that's beside the point. The court was devoid of
 authority to order the People to engage in plea discussions
 in the first place. The mediation order did just that: It
 required the People to engage in plea discussions through
 mediation.

 ¶36
 Moreover, the court issued the mediation order at
 Justice's behest, after he was unsuccessful in obtaining
 a more favorable offer from the People. Under these
 circumstances, requiring the People to participate in
 mediation was tantamount to ordering them to consider a
 different offer. This, too, transgressed sections
 16-7-301(1)-(2) and 16-7-302(1).

 ¶37
The district court and Justice alternatively maintain that
 trial courts have inherent authority to order mediation in
 criminal cases. We disagree. The district court and Justice
 misunderstand the inherent authority doctrine.

 ¶38
 Trial courts have inherent authority to carry out their
 duties, including as reasonably required to allow them to
 efficiently perform their judicial functions;

 to protect their dignity, independence, and integrity; and to
 effectuate their lawful actions. Laleh v. Johnson,
 2017 CO 93, ¶ 21, 403 P.3d 207, 211-12. But "the
 inherent power of courts is not unlimited, and courts must
 proceed 'cautiously' when invoking the inherent
 authority doctrine." Id. at ¶ 21, 403 P.3d
 at 212 (quoting Pena v. Dist. Ct., 681 P.2d 953, 957
(Colo. 1984)). That which causes a court to invoke its
 inherent authority "must be reasonably necessary"
 for the court's proper functioning. Id. (quoting
Pena, 681 P.2d at 957).

 ¶39
 Ordering mediation in a criminal case is not reasonably
 necessary for a trial court's proper functioning. To the
 contrary, doing so may hinder the court's proper
 functioning because, as arguably occurred here, it may
 inadvertently land the court smack in the middle of the plea
 bargaining process and compromise the court's role as a
 neutral arbiter.

 ¶40
 In any event, whatever a trial court's inherent
 authority, it cannot be used as a license to contradict
 statutes or rules. Just a couple of terms ago, in
 Kilgore, ¶ 26, 455 P.3d at 751, it was the
 People urging us to lean on a trial court's inherent
 authority. Such authority, they asserted, justified the
 court's order requiring disclosure of a defendant's
 exhibits before trial. Id. We declined the
 invitation because nothing in Crim. P. 16 permitted the court
 to require the challenged disclosure. Id. at ¶
 25, 455 P.3d at 751. We explained that a trial court's
 inherent authority could not expand the contours of Crim. P.
 16. Id. at ¶ 26, 455 P.3d at 751.

 ¶41
 Now the shoe is on the other foot-it's the defense
 attempting to justify an order based on a trial court's
 inherent authority. We reach a similar conclusion as in
 Kilgore: Whatever a trial court's inherent
 authority, it cannot alter sections 16-7-301(1)-(2) and
16-7-302(1).

 ¶42
 Notably, to effectuate its mediation order, the district
 court required the parties to submit certain information to
 the mediator. Specifically, the court ordered each party to
 provide to the mediator "a confidential settlement
 statement" and any documents that might help him
 understand the "strengths and weaknesses of either
 party." But we are not aware of any authority permitting
 a Colorado trial court in a criminal case to order the
 parties, over their objection, to submit a confidential
 settlement statement and other case-related information to a
 mediator.[5] Hence, the mediation order, in addition to
 being out of step with the statutes and rules controlling
 plea bargaining, contained a requirement that stood on shaky
 footing.

 ¶43
 In sum, compulsory mediation is a square peg, and squeeze it
 as a trial court might, it does not fit in the round hole of
 criminal litigation. The district court, though
 well-intentioned, erred in ordering mediation in this
 criminal case.

 IV.
Conclusion

 ¶44
 For the foregoing reasons, we conclude that a trial court
 lacks the authority to order mediation in a criminal case.
Because the district court required mediation, and because
 the mediation order arguably involved the court in the plea
 bargaining process, we make absolute the rules to show cause.

---------

[1] The People filed C.A.R. 21 petitions
 in only two cases (the cases now before us): one in the case
 in which private counsel represents Justice and another in
 one of the cases in which a deputy public defender represents
 Justice. According to the People, they proceeded in this
 fashion because they understood the district court's
 written order to apply to only these two cases.

[2] Although there are three orders in
 play (the oral order, the written order, and the referral
 order), they are compatible with one another. Therefore, we
 refer generally to the mediation order.

[3] Crim. P. 11(f) contains provisions
 that shadow those found in sections 16-7-301(1)-(2) and
16-7-302(1).

[4] Once the parties reach a tentative
 plea agreement, they may seek permission to share with the
 trial court "the tentative agreement and the reasons
 therefor in advance of the time for tender of the plea";
 the court, in turn, may then inform the parties whether it
 will "concur in the proposed disposition." §
 16-7-302(2).

[5] Of course, if the parties in a case
(including a criminal one) agree to mediation, the mediator
 may require them to submit a confidential settlement
 statement and other case-related information. Similarly, in a
 civil case in which compulsory mediation is authorized, the
 mediator may require the parties to do the same.

---------