**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1286n.06

No. 12-3557

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Dec 13, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| HING SHING LAU, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  BATCHELDER, Chief Judge; MERRITT and KETHLEDGE, Circuit Judges.

PER CURIAM.  Hing Shing Lau appeals his conviction and sentence for violating the export control laws.  We affirm.

Lau, a Hong Kong national, attempted to export twelve thermal imaging cameras from the United States to Hong Kong without first obtaining the required export licenses from the Department of Commerce.  When Lau arrived in Canada to complete the transaction on June 3, 2009, he was apprehended by Canadian law enforcement authorities pursuant to an arrest warrant issued by the district court.  A federal grand jury subsequently returned an indictment charging Lau with two counts of violating the export control laws, in violation of 50 U.S.C. § 1705(a), (c) and 15 C.F.R. §§ 736.2, 764.2, and 774, and four counts of money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A).  Lau was extradited to the United States in October 2010.

After multiple continuances and substitution of defense counsel, the district court scheduled a jury trial for May 14, 2012.  Two weeks before the scheduled trial date, the district court received

a fifteen-page handwritten letter from Lau. Lau apologized for writing directly to the district court, stating that he had decided to write the letter "[a]fter the negotiations finally broke down last Friday." After expressing his doubts about his appointed counsel, Lau then addressed "the reasons of reaching a deadlock in plea negotiations." Lau wrote: "A reasonable compromise is my first goal. To be honest, I'm very want to settle this case as soon as possible because I already have been detained 3 years straightly [sic]." Lau raised three objections to the government's proposed plea agreement, which he attached to his letter. First, Lau objected to a provision regarding waiver of the statute of limitations if the plea agreement or his conviction was voided. Lau next asserted that the plea agreement purported to be an agreement for a specific sentence pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), but contained a provision in which the parties reserved the right to argue and offer evidence regarding additional specific offense characteristics, adjustments, and departures as well as the sentencing factors under 18 U.S.C. § 3553(a). Finally, Lau raised an objection to the statement of facts attached to the plea agreement. In concluding his discussion of the plea negotiations, Lau stated that "I only fully trust Your Honor" and that "I really want to plea to the court and ask Your Honor's equity if I need to plea guilty instead to accept a 'dummy' agreement that may lure me into another trap. Or if the prosecutor can make some real concessions, it might also can break the deadlock."

The attached plea agreement, pursuant to which Lau would plead guilty to two counts of violating the export control laws, contained handwritten edits made by Lau. One paragraph provided that the parties agreed to recommend a 46-month sentence pursuant to Rule 11(c)(1)(C), but "46" was marked out and replaced in handwriting with "10." In paragraphs addressing the applicable guidelines range, handwritten edits changed which guideline would apply, lowered the resulting base

offense level from 26 to 14, and lowered the corresponding guidelines range from forty-six to fifty-seven months to ten to sixteen months.

The district court addressed Lau's letter at an in-court status conference. The district court stated that it had given a copy of Lau's letter to defense counsel, who had provided the district court with a copy of the plea agreement that was "currently . . . on the table." The district court noted that the current plea agreement incorporated most of Lau's suggested changes, including the lower offense level of 14 and the lower corresponding guidelines range of ten to sixteen months. When the district court asked Lau if he had seen the newest plea agreement, Lau responded: "Yes. I already go for the new agreement." The district court stated: "[I]t's my understanding that if the plea was entered, nobody would have an objection to an imposition of the minimum term of imprisonment, which would be the ten months. If you got credit for time served, as far as your relationship with me, that would be over. You would be finished." The district court asked the attorneys about Lau's likely offense level if he proceeded to trial and was convicted as charged, with the prosecutor responding that the offense level could rise to 26. The district court stated:

> So the potential, if you go to trial, Mr. Lau, is 63 months to 78 months. The original Plea Agreement was less than that, and the one that's on the table is 10 to 16 months. So you've got to make a decision about whether or not you want to risk exposure to possibly being sent to jail for more than five years or if you want to accept the Plea Agreement and conclude the proceedings that are in front of me.

When Lau expressed concern that the Rule 11(c)(1)(C) plea agreement would not bind the government, the district court said that "once the plea is entered, I don't care what they say. I'm going to do what I'm going to do. . . . Which, I can tell you as of right now, is going to be the ten-month sentence." When asked what he wanted to do, Lau responded that he wanted to "[a]ccept a plea."

Due to Lau's concerns with the statement of facts attached to the plea agreement, the district court decided to begin the plea colloquy with the facts supporting Lau's plea. After the district court reviewed the facts with Lau and the parties prepared a revised statement of facts, the district court completed the Rule 11 colloquy and accepted Lau's guilty plea to two counts of violating the export control laws. Because Lau waived the right to a presentence investigation, the district court proceeded to sentencing and sentenced Lau to ten months of imprisonment, with credit for time served, and two years of supervised release.

This timely appeal followed. Lau asserts that the district court (1) improperly involved itself in the plea agreement process and (2) improperly imposed a term of supervised release in light of his imminent deportation.

Because Lau did not object to the district court's participation in the plea agreement process, we review for plain error. *United States v. Sammons*, 918 F.2d 592, 601 (6th Cir. 1990). To prevail under the plain-error standard, Lau must demonstrate: (1) that an error occurred, (2) that the error was "clear or obvious," and (3) that the error affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If these three prongs are satisfied, we have "the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and brackets omitted).

Lau expressed his desire to plead guilty in his letter to the district court, to which he attached a copy of the proposed plea agreement with his edits. When the district court asked at the beginning of the status conference if Lau had seen the newest plea agreement incorporating most of his suggested changes, Lau responded: "Yes. I already go for the new agreement." The district court ultimately sentenced Lau to ten months of imprisonment—his desired sentence.

The district court's discussion of the sentencing possibilities did not render Lau's plea involuntary. Contrary to Lau's opening brief, the district court did not tell Lau that it would sentence him to in excess of five years if he did not plead guilty. The district court merely advised Lau that, by proceeding to trial, he risked exposure to such a sentence. As for the district court's assurances that it would impose a sentence of ten months if Lau pleaded guilty, those representations were not coercive and were consistent with Rule 11(c)(4). *See United States v. Ebel*, 299 F.3d 187, 191-92 (3d Cir. 2002).

Lau argues that the district court promised that he "would be finished" if he pleaded guilty, but then imposed a two-year term of supervised release. The term of supervised release was not "reporting supervised release, but the special conditions are that if you illegally reenter this country or commit a crime in this country, that will be a violation of that release." The district court explained to Lau, "if you came back in the country during that two-year period, which would start today, if you came back illegally or came back legally and committed a crime, you would be in violation, and you would be back here in front of me in here for sentencing on that violation." The supervised release placed no obligation on Lau other than refraining from violating the law. Lau's claim that the district court made a false promise to induce his plea is without merit.

We review Lau's sentence for reasonableness under a deferential abuse-of-discretion standard. *United States v. Battaglia*, 624 F.3d 348, 350 (6th Cir. 2010). In support of his argument that the district court should not have imposed a term of supervised release given his imminent deportation, Lau relies on USSG § 5D1.1(c): "The court ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant

is a deportable alien who likely will be deported after imprisonment." The commentary to USSG

§ 5D1.1 explains:

> Unless such a defendant legally returns to the United States, supervised release is unnecessary. If such a defendant illegally returns to the United States, the need to afford adequate deterrence and protect the public ordinarily is adequately served by a new prosecution. The court should, however, consider imposing a term of supervised release on such a defendant if the court determines it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case.

USSG § 5D1.1, comment. (n.5). Lau's case was not a mine-run illegal reentry case. The district court did not abuse its discretion in imposing a two-year term of supervised release, which, as noted above, was non-reporting and imposed no obligation other than to refrain from violating the law.

For the foregoing reasons, we affirm Lau's conviction and sentence.